"In the case before us, the Georgia Supreme Court has affirmed a sentence of death based upon no more than a finding that the offense was 'outrageously or wantonly vile, horrible and inhuman.' There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of [the aggravating circumstance's] terms. In fact, the jury's interpretation of [that circumstance] can only be the subject of sheer speculation."

Godfrey, 446 U.S. at 428-29.

The importance of the answer to this special issue has already been discussed. Without an affirmative answer, a life sentence will be imposed. Before such an important question can be answered, jurors must know what they are being asked. The current issue does not provide adequate guidance, and thereby creates the possibility the decision will based on improper considerations. As such, Petitioner suggests his conviction and sentence must be set aside.

## TENTH ISSUE FOR REVIEW

### THE "12/10 RULE" FOUND IN ARTICLE 37.071 IS UNCONSTITUTIONAL BECAUSE IT VIOLATES MR. PARR'S RIGHT GUARANTEED BY THE 6TH, 8TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION

The following facts support this claim:

Issue Ten of Mr. Parr's direct appeal brief to the Texas Court of Criminal Appeals complained that his constitutional rights were violated by the punishment charge, which

required at least ten "no" votes for the jury to return a negative answer to the first special issue and at least ten "yes" votes for the jury to return an affirmative answer to the second special issue. The court's instructions in this case tracked TEX. CODE CRIM. PROC. ANN. art. 37.071. 2 CR 320-22. Jurors were told that the first special issue required a unanimous vote to answer yes. To vote no, there needed to be the agreement of 10 jurors. The same instruction was given for the second special issue, except the votes were switched; unanimity was required for a no answer, while 10 jurors were necessary for a yes answer. Jurors were also told that if they could not agree on an answer to special issue number one, then neither verdict should be signed. 2 CR 320-22. The Court of Criminal Appeals denied Petitioner's claim. Parr, 2006 WL 1544742 at *5.

Texas law requires that neither the court, the state, nor counsel for the defense may inform a juror or prospective juror of the effect of the jury's failure to agree on special issues at punishment. TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(a) (Vernon Supp. 2002). Texas law also requires that the capital sentencing jury be instructed that it may not answer the first special issue "yes" or the second special issue "no" unless 10 or more jurors agree. See TEX. CODE CRIM. PROC. ANN. art. 37.071 §§ 2(d)(2) & 2(f)(2) (Vernon Supp. 2002).

The "10-12 rule" contained in TEX. CODE CRIM. PROC. ANN. art 37.071 violates the constitutional principles discussed in Mills v. Maryland, 486 U.S. 367 (1988), and McCoy v. North Carolina, 494 U.S. 294 (1990). The "10-12 provision" requires that, in

order for the jury to return answers to the special issues that would result in a life sentence, (1) at least ten jurors must vote "no" in answering the first special issue, (2) at least ten jurors must vote "no" in answering the second special issue, or (3) at least ten jurors must vote "yes" in answering the third special issue. This "10-12 provision" violates the Eighth and Fourteenth Amendments because there is a reasonable possibility that, under the present Texas capital sentencing scheme, all twelve jurors in a capital case could believe that a life sentence would be appropriate under state law, but, because at least ten jurors could not collectively agree on their answer to any one of the special issues, the jury could not return a life sentence. Such a "majority rules" mentality could lead jurors to change their potential holdout votes for life to a vote for the death penalty.

Petitioner understands that the Eighth Amendment does not require that the jurors be instructed as to the consequences of their failure to agree. Jones v. United States, 527 U.S. 373, 381 (1999). However, a jury cannot be "affirmatively misled regarding its role in the sentencing process." Romano v. Oklahoma, 512 U.S. 1, 9 (1994). The "12-10" rule produces this type of misleading effect. In fact, it misleads and diminishes the individual role of each juror in the assessment of punishment by suggesting that a life sentence can not be assessed unless ten jurors believe a life sentence is appropriate. Section 2(g) of Article 37.071 mandates that if the jury can not answer one of the special issues, then, a life sentence will result.

The United States Supreme Court has held that, in judging the constitutionality of a capital sentencing statute, a court must ask how a reasonable juror could view his or her role under the statutory scheme. <u>California v. Brown</u>, 479 U.S.538, 541 (1985). Mr. Parr argues that Sections 2(d) and 2(f) of Article 37.071 have a chilling effect on the jury because these provisions diminish the perceived legal effect of a single juror's vote. This feature of Article 37.071 creates the potential for unwarranted confusion among reasonable jurors. It encourages "majority rule" instead of the individual rule of each juror. It encourages collective thinking instead of individualized decision making. It generates the danger that a juror, who otherwise might be disposed to vote for life, will conform to the "majority rule" because the juror wrongfully believes that his or her vote will in no wise ever result in a life sentence. In effect, this statute creates the impression that a single holdout is meaningless. Even more distressing, this statute encourages a death sentence instead of life.

The CCA has previously rejected this argument in Mr. Parr's case.[21] That decision, however, is not controlling because it violates the principles that underlie <u>McKoy</u> and <u>Mills</u>, both of which dictate the determination of this claim. Thus, the state court's decision on this claim "was contrary to [and] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[21] This argument has been rejected by the Fifth Circuit. <u>Alexander v. Johnson</u>, 211 F.3d 895 (5th. Cir. 2000). Mr. Parr includes it here because he believes in its merit and to preserve the issue for possible later review.

# ELEVENTH ISSUE FOR REVIEW

## TEXAS' METHOD OF EXECUTION VIOLATES THE EIGHTH AMENDMENT

Petitioner argues that the sentence of lethal injection utilized by the State of Texas violates the Eighth Amendment. Recently, the United States Supreme Court granted review of this issue on three sub-issues[22]:

1. Does the Eighth Amendment to the United States Constitution prohibit means for carrying out a method of execution that create an unnecessary risk of pain and suffering as opposed to only a substantial risk of the wanton infliction of pain?

2. Do the means for carrying out an execution cause an unnecessary risk of pain and suffering in violation of the Eighth Amendment upon a showing that readily available alternatives that pose less risk of pain and suffering could be used?

3. Does the continued use of sodium thiopental, pancuronium bromide, and potassium chloride, individually or together, violate the cruel and unusual punishment clause of the Eighth Amendment because lethal injections can be carried out by using other chemicals that pose less risk of pain and suffering?[23]

When this method is used, the condemned person is usually bound to a gurney and a member of the execution team positions several heart monitors on this skin. Two needles (one is a back-up) are then inserted into usable veins, usually in the inmates arms. Long tubes connect the needle through a hole in a cement block wall to several intravenous drips. The first is a harmless saline solution that is started immediately. Then,

---

[22] Baze v. Rees, 2007 WL 2075334 (U.S. September 25, 2007) (order granting writ of certiorari).

[23] Found at http://www.supremecourtus.gov/docket/07-5439.htm.

at the warden's signal, a curtain is raised exposing the inmate to the witnesses in an adjoining room. Then, the inmate is injected with sodium thiopental - an anesthetic, which puts the inmate to sleep. Next flows pavulon or pancuronium bromide, which paralyzes the entire muscle system and stops the inmate's breathing. Finally, the flow of potassium chloride stops the heart. Death results from anesthetic overdose and respiratory and cardiac arrest while the condemned person is unconscious. (Ecenbarger, 1994 and Weisberg, 1991).[24]

The Eighth Amendment prohibits governmental imposition of "cruel and unusual punishments," U.S. CONST. amend. VIII, and bars "infliction of unnecessary pain in the execution of the death sentence." Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 464 (1947) (plurality opinion). "Punishments are deemed cruel when they involve torture or a lingering death . . ." In re Kemmler, 136 U.S. 436, 447 (1890). The meaning of "cruel and unusual" must be interpreted in a "flexible and dynamic manner." Gregg, 428 U.S. at 171, and measured against "the evolving standards of decency that mark the progress of a maturing society," Trop v. Dulles, 356 U.S. 86, 101 (1958) (plurality opinion).

However, Petitioner admits that this matter has not been exhausted in state court, but that it meets the procedural default exception. Coleman v. Thompson, 501 U.S. 722, 750 (1991). In all cases in which a state prisoner has defaulted his federal claims in state

---

[24] Found at http://www.deathpenaltyinfo.org/article.php?did=479&scid

court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Thompson, 501 U.S. at 750.

As the Supreme Court explained: "The writ of habeas corpus indisputably holds an honored position in our jurisprudence. Tracing its roots deep into English common law, it claims a place in Art. I of our Constitution. Today, as in prior centuries, the writ is a bulwark against convictions that violate "fundamental fairness." Engle v. Isaac, 456 U.S. 107, 126 (1982). Furthermore, the Court found that "[w]e might hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim." Engle, 456 U.S. at 131.

Here, to utilize procedural default on this matter would have required the foresight of trial counsel, state direct and collateral appellate counsel to recognize this issue, and present it before the Texas courts although it was not yet a blip on the radar. See Rutherford v. McDonough 466 F.3d 970, 981 (11th Cir. 2006) ("Recent developments in medical research have called into question the degree of pain and suffering caused by the method of lethal injection . . ."). As such, if the Supreme Court should so find that the methodology of lethal injection would be held to be unconstitutional, Petitioner could be

executed utilizing an unconstitutional execution method. Petitioner requests that the Court grant review of this issue, and to overturn his conviction.

## PRAYER

For the reasons set forth above, Petitioner requests that a Writ of Habeas Corpus issue, and that he be granted release, a new trial, a new punishment trial, or whatever other relief he may be entitled.

Respectfully submitted,

**LAW OFFICE OF STAN SCHWIEGER**

_____

Stan Schwieger
600 Austin Avenue, Suite 12
P.O. Box 975
Waco, TX  76703
254-752-5678
254-752-7792–Facsimile
State Bar No. 17880500
ATTORNEY FOR PETITIONER

## CERTIFICATE OF SERVICE

The following has been mailed to the Office of the Texas Attorney General, P.O. Box 12548, Austin, TX 78711-2548.

_____

Stan Schwieger