IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CARROLL JOE PARR, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 6:06-CV-00317-WSS |
| | § | DEATH PENALTY CASE |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner, Carroll Joe Parr, and an accomplice robbed and killed two men following a marijuana purchase. A Texas jury subsequently convicted Parr of capital murder and sentenced him to die. Following unsuccessful direct appeal and writ proceedings in state court, Parr now seeks federal habeas relief in this Court.

Yet, for the reasons that follow, Parr's petition is without merit and should be denied. Respondent, Nathaniel Quarterman, Director of the Texas Department of Criminal Justice—Correctional Institutions Division ("the Director"), therefore moves for summary judgment. This Court has jurisdiction over the subject matter and parties under 28 U.S.C. §§ 2254 and 2241.

## PETITIONER'S ALLEGATIONS

Parr's petition to this Court presents eleven issues. The Director understands Parr to allege that:

(1)     the jury instructions provided during punishment violated the Supreme Court's holding in *Penry v. Johnson*[1];

(2)     he did not receive constitutionally effective assistance of counsel because his attorneys deferred to his decision to accept the juror that they considered unsatisfactory;

(3)     the trial court compromised Parr's right to self-representation when it did not admonish him regarding his decision to accept the aforementioned juror;

(4)     the trial court erroneously excluded another "vacillating" juror;

(5)     the State did not establish beyond a reasonable doubt that Parr committed two extraneous offenses presented during punishment;

(6)     the evidence was insufficient to prove that Parr was a future danger;

(7-9)   the Texas special issues are unconstitutionally vague because they do not define the terms "probability," "criminal acts of violence," or "society;"

(10)    the 12/10 rule is unconstitutional; and

(11)    the lethal injection protocol Texas uses to execute capital offenders constitutes cruel and unusual punishment.

Petition at 2, 21, 26, 32, 40, 49, 54, 58.

Parr exhausted claims one and four through ten during direct appeal.  *Parr v. State*, No. 74,973 (Tex. Crim. App. June 7, 2006) (unpublished).  Parr exhausted his second claim during his state habeas proceeding.  SHR[2] at 2-37 (Application); *Ex parte Parr*, Application

---

[1]     *Penry  v. Johnson*, 532 U.S. 782, 797 (2001) ("*Penry II*").

[2]     The Director has submitted Parr's state court records under separate cover.  As a reference, "CR" refers to the clerk's record of pleadings and documents that were filed with the trial court; "RR" refers to the court reporter's transcript of the trial proceedings; and "SHR" refers to the

No. 65,443-01 at Order (Tex. Crim. App. Oct. 11, 2006) (per curiam) (unpublished).  Parr's

third and eleventh claims were never presented to the state court and are therefore

unexhausted and procedurally defaulted.  The Director denies all allegations of fact set forth

in Parr's petition that are neither supported by the record nor specifically admitted herein.

### STATEMENT OF THE CASE

A grand jury indicted Parr for the offense of capital murder for intentionally and

knowingly causing the death of Joel Dominguez in the course of committing or attempting

to commit the offense of robbery.  1 CR 12 (Indictment).  On May 21, 2004, a jury found

Parr guilty and sentenced him to death.  2 CR 293 (Charge); 2 CR 328 (Judgment and

Sentence).  The Texas Court of Criminal Appeals affirmed the judgment of the trial court on

June 7, 2006.  *Parr*, No. 74,973.  On January 8, 2007, the Supreme Court refused Parr's

petition for a writ of certiorari.  *Parr v. Texas*, 127 S.Ct. 937 (2007).

During direct appeal proceedings, Parr filed an application for writ of habeas corpus.

SHR 2-37 (Application).  Based on the convicting court's fact findings of fact and

conclusions of law—as well as on its own review of the state court record—the Court of

Criminal Appeals denied Parr's request for habeas relief on October 11, 2006.[3]  *Ex parte*

---

clerk's record of pleadings and documents filed during Parr's state writ proceedings.  All references
are preceded by volume number and followed by page numbers, where applicable.

     [3]     The trial court's findings were adopted by the Court of Criminal Appeals.  *Ex parte
Parr*, Application No. 65,443-01 at Order.

*Parr*, Application No. 65,443-01 at Order.  Parr filed his federal petition for a writ of habeas corpus on October 4, 2007.  Petition at 1.  The instant proceeding followed.

## STATEMENT OF FACTS

### I.    Facts Of The Crime

While discussing Parr's challenge to the jury's finding that he was a future danger, the Court of Criminal Appeals provided the following summary of the evidence:

> [. . .] On January 11, 2003, [Parr] arranged to purchase marijuana from Joel Dominguez outside the B & G Convenience store in McLennan County.  After the drug deal was completed, [Parr] returned to the store with his friend Earl Whiteside because he wanted to get his money back.  [Parr] and Whiteside saw Dominguez standing outside the store with his friend Mario Chavez and made them walk into a fenced area beside the store.  [Parr] struck Dominguez multiple times in the head with his gun, demanding money.  Dominguez complied and gave him all the money he was carrying.  [Parr] told Whiteside, who wanted to leave, to "[s]moke 'em."  Whiteside shot Chavez in his hand. [Parr] shot Dominguez at close range in his head, and Dominguez died from his injuries.
>
> [Parr] testified that he had planned the drug deal, but stated that he was not involved in the robbery and that his friend Damion Montgomery did the shooting.  However, both Chavez and Whiteside identified [Parr] as the person who shot Dominguez.  Further, four people—[Parr's] girlfriend Dawanna Harrison, [Parr's] friend Ricky Garcia, [Parr's] cellmate Kenneth Reneau, and Montgomery—all testified that [Parr] confessed to them that he was the shooter.

*Parr*, No. 74,973 at 3-4 (paragraphs added).

**II.     Evidence Relating To Punishment**

With regard to the evidence presented during punishment, the Court of Criminal

Appeals noted:

> At punishment, the State presented evidence showing an escalating pattern of disrespect for the law. [Parr] was convicted of three counts of delivery of cocaine on November 26, 1996, and was placed on probation. On January 8, 1998, [Parr] violated the terms of his probation and was sentenced to two years in state jail. After his release, he was convicted of evading arrest on December 29, 2000, and of possession of marijuana on December 13, 2001. There was evidence that [Parr] had committed a number of violent unadjudicated offenses, including a shooting at a residence in 2002 and an assault in 2003. Also, there was significant evidence regarding his involvement in the unadjudicated murder of Ronnie Zarazua on December 9, 2001.
>
> The State introduced evidence indicating that appellant was without regret or remorse for the alleged killing of Zarazua or the murder of Dominguez, and that he expressed a willingness to engage in future violent acts. Whiteside testified that immediately after killing Zarazua, [Parr] returned to the site where he had dumped the body to show it to him. Whiteside claimed that [Parr] told him that he had killed Zarazua because he was supposed to testify against [Parr's] friend Milton Crosby. He also said that [Parr] did not express any remorse for the killing, stating that he was "keeping it real" for Crosby. Harrison also testified that [Parr] drove her to the area where he had shot Zarazua and told her that he did it because Zarazua was going to testify against one of his friends. Similarly, witnesses claimed that after shooting Dominguez, [Parr] did not express remorse and was angry with Whiteside for not killing Chavez because he did not want to leave a witness behind.

*Parr*, No. 74,973 at 3-4 (paragraphs added) (citations omitted).

5

# ANSWER

## I.    Standard Of Review

Parr's petition for a writ of habeas corpus is subject to review under the amendments to the federal habeas corpus statutes embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (noting that the AEDPA applies to those habeas corpus cases filed after its effective date of April 24, 1996).  The provisions of Section 2254(d) set forth a "highly deferential standard for evaluating state-court rulings . . . which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  Here, the petitioner may not obtain federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Price v. Vincent*, 538 U.S. 634, 639 (2003); *see also Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).  Courts are to review pure questions of law and mixed questions of law and fact under subsection

6

(d)(1), and pure questions of fact under subsection (d)(2). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision' . . . not grading their papers."). Indeed, the AEDPA deferential standard of review applies even if the state court does not cite to applicable Supreme Court precedent or does not explain its decision. *Early v. Packer*, 537 U.S. 3, 7, 8 (2002); *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002).

A decision is contrary to clearly-established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect or erroneous. *See Lockyer v. Andrade*, 538 U.S. 63, 65 (2003). Rather, the state court's application of clearly-established law must be "objectively unreasonable." *Id.* Stated another way, a

reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *See Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001); *see also Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) (reiterating that the standard for federal habeas relief is one of objective reasonableness) and *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding that a federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence").

Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); (citing *Williams*, 529 U.S. at 403-404). A federal habeas court's inquiry into unreasonableness should be objective rather than subjective, and a court should not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly-established federal law erroneously or incorrectly. *Williams*, 529 U.S. at 409-11; *Tucker v. Johnson*, 242 F.3d 617, 620-21 (5th Cir. 2001). Rather, federal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable. *Williams*, 529 U.S. at 411; *Martin*, 246 F.3d at 476. In other words, habeas relief is inappropriate when a state court, at a minimum, reaches a

"satisfactory conclusion." *Williams*, 529 U.S. at 410-11 (citing *Wright v. West*, 505 U.S. 277, 287 (1992)).

In review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by *clear and convincing evidence*." 28 U.S.C. §2254(e)(1) (emphasis added); *see Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Sumner v. Mata*, 449 U.S. 539, 546-47 (1981) (holding that state appellate courts' findings are entitled to the same respect that trial judges' findings receive). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001).

Moreover, where the petitioner has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

    (A)    the claim relies on–

            (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

            (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B)     the facts underlying the claim would be sufficient to establish by clear
> and convincing evidence that but for constitutional error, no reasonable
> factfinder would have found the applicant guilty of the underlying
> offense.

28 U.S.C. § 2254(e)(2) (2004).

Thus, in the state courts, a petitioner "must be diligent in developing the record and presenting, if possible, all claims of constitutional error.  If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, Section 2254(e) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met."  *Michael Williams v. Taylor*, 529 U.S. 420, 437 (2000).

Finally, habeas relief is foreclosed if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## II.     Parr's *Penry II* Claim Is Meritless.

In his first claim, Parr argues that "mitigation special issue send mixed signals to the jury[,] thereby rendering any verdict reached in response to that special issue unreliable."

10

Petition at 2 (formatting omitted).  In support of his argument, Parr relies on the Supreme

Court's holding in *Penry II* and the Fifth Circuit's holding in *Coble v. Quarterman*, 496 F.3d

430 (5th Cir. 2007).  Yet, Parr was not sentenced under the special issues found problematic

in those cases.  Consequently, his claim is meritless and should be denied.

In his petition, Parr asserts:

> To impose a capital sentence under the version of the Texas statute in
> force when Mr. Parr was tried, the jury had to issue two questions in the
> affirmative.  The first special issue interrogatory addressed whether the
> defendant had acted "deliberately and with the reasonable expectation that the
> death of the deceased or another would result."  The second special issue
> question instructed the jury to consider "whether there is a probability that the
> defendant would commit criminal acts of violence that would constitute a
> continuing threat to society."

Petition at 4.

But Parr's assertion is flatly wrong.  These were not the special issues provided by the

trial court.  The special issues used in Parr's trial were as follows:

Special Issue No.1

> Is there a probability that the defendant, Carroll Joe Parr, would commit
> criminal acts of violence that would constitute a continuing threat to society?

[. . .]

Special Issue No. 2

> Taking into consideration all of the evidence, including the
> circumstances of the offense, the defendant's character and background, and
> the personal moral culpability of the defendant, do you find that there is a

11

sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

2 CR 320-22.

Parr's jury received the modern special issues, which includes a mitigation instruction. In *Coble* and *Penry II*, the jury were not so instructed. Rather, Coble and Penry received a judicially-crafted "nullification" instruction. *Penry II*, 532 U.S. at 797-798; *Coble*, 496 F.3d at 443. In contrast, the Supreme Court specifically commended the current Texas capital sentencing scheme as correctly giving juries an "adequate" alternative. *Penry II*, 532 U.S. at 803.

As Parr's claim is objectively contrary to the record, the Court of Criminal Appeals correctly rejected this claim. *Parr*, No. 74,973 at 11.

**III. Parr's Claim that He Received Ineffective Assistance of Counsel Is Procedurally Defaulted. In the Alternative, Parr Received Constitutionally Effective Assistance of Counsel.**

In his second claim for relief, Parr complains that he did not receive constitutionally effective assistance of counsel because his attorneys deferred to his decision to accept a juror that they deemed unsatisfactory. Petition at 21-24. Counsel put on the record that they strongly wished to exercise a strike against juror Billy Foy Sanders, but Parr insisted that counsel accept him. 9 RR 89-90. In response to questioning by the Court, Parr acknowledged that accepting Sanders was his decision. *Id.*

12

**A.     This claim is procedurally defaulted because Parr failed to raise it on direct appeal.**

Parr's ineffective-assistance-of-counsel claim is barred by the doctrine of procedural default. "The procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing a claim explicitly rejects it on a state procedural ground." *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004). "Where, as here, a state court clearly and expressly states that its judgment rests on a state procedural bar, a presumption arises that the state court decision rests on independent and adequate state law grounds." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir.1997).

One of the conclusions reached by the state habeas corpus court was that this claim could have been raised on direct appeal. SHR 96. In Texas, it is clearly established that claims which could have been raised on direct appeal are barred from collateral review. *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The record in this case does not support the

application of any of these exceptions.  Accordingly, Parr's claim should be barred as the result of his procedural default.

**B.      In the alternative, Parr received constitutionally effective assistance of counsel.**

### 1.      Standard of Review

The familiar two-prong standard by which a claim of ineffective assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  That is, to establish that counsel performed ineffectively, Parr must show both that his attorney's performance was deficient and the deficient performance prejudiced his defense.  *Id*. at 687.  Furthermore, because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong.  *Id*. at 697.

In order to establish that counsel's performance was constitutionally deficient, a convicted defendant must show that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*. at 687.  In so doing, a convicted defendant must overcome a strong presumption that trial counsel's conduct fell within a wide range of reasonable professional assistance, and every effort must be made to eliminate the "distorting effect of hindsight."  *Strickland*, 466 U.S. at 689.

Next, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."  *Strickland,* 466 U.S. at

14

692.  In order to establish that he has sustained prejudice, Parr "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id*.  A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*; rather, Parr must "affirmatively prove" prejudice.  *Id*. at 693.

The burden of proof in the habeas corpus proceedings attacking trial counsel's effectiveness was on Parr.  *Martin v. Maggio*, 711 F.2d 1273, 1279 (5th Cir. 1983).  And, of course, historical findings of fact underlying the state court determination are entitled to a presumption of correctness.  *Wheat v. Johnson*, 238 F.3d 357, 362 (5th Cir. 2001).

### 2.    Acceding to a client's wishes does not constitute ineffective assistance of counsel.

Parr argues that counsel should have overridden his decision to accept Sanders as a juror.  Petition at 21-24.  Yet, the defendant is presumed to be the master of his own defense. *Moore v. Johnson*, 194 F.3d 586, 606 (5th Cir. 1999) (citing *Faretta v. California*, 422 U.S. 806, 820 (1975); *United States v. Masat,* 896 F.2d 88, 92 (5th Cir. 1990); *Mulligan v. Kemp,* 771 F.2d 1436, 1441-42 (11th Cir. 1985)).  Indeed, a competent defendant may dismiss counsel and conduct his defense himself.  *Faretta*, 422 U.S. at 819.  "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id*. at 819-20.

On basic trial strategy, the circumstances are rare when counsel is not required to follow his client's instructions. *Lowenfield v. Phelps*, 817 F.2d 285, 292-93 (5th Cir. 1987) (determining that counsel not ineffective for failing to assert insanity defense when client wished to assert alibi defense), *citing Autry v. McKaskle*, 727 F.2d at 361. More importantly, a reviewing court does not permit a defendant to avoid conviction on the grounds that the lawyer followed the defendant's instructions. *Masat,* 896 F.2d at 93.

> [A] defendant's Sixth Amendment rights are his alone, and that trial counsel, while held to a standard of "reasonable effectiveness," is still only an *assistant* to the defendant and not the master of the defense. . . . Because we recognize that a defendant must have this broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the explicit direction of the client.

*Mulligan v. Kemp*, 771 F.2d 1441 (italics in original), *cited in Masat,* 896 F.2d at 93; *see also Faretta*, 422 U.S. at 820 ("The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a *willing* defendant . . . .") (italics added).

The Fifth Circuit has repeatedly held that a trial counsel is not required to ignore a client's insistence upon a particular trial strategy, even if that strategy is self-defeating. *Wood v. Quarterman*, 491 F.3d 196, 203 (5th Cir. 2007) ("Neither the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence."); *Nixon v. Epps*, 405

F.3d 318, 325-26 (5th Cir. 2005) (holding the defendant cannot block his trial counsel from attempting one line of defense at trial and then argue on appeal that counsel was ineffective for failing to introduce evidence supporting that defense); *Roberts v. Dretke*, 381 F.3d 491, 499-500 (5th Cir. 2004) (trial counsel did not render deficient performance by acquiescing to defendant's self-destructive instructions not to present mental health expert testimony in mitigation at punishment phase of capital trial); *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir. 2004) (where a defendant forbids his trial counsel from interviewing family members, the defendant may not thereafter complain of ineffective assistance arising from the failure to discover mitigating evidence known to those same family members); *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) (holding trial counsel may not be held ineffective for honoring his client's wishes that his family members not be interviewed or called to testify at trial as long as the client made an informed decision); *Amos v. Scott*, 61 F.3d 333, 348-49 (5th Cir. 1995) (holding no deficient performance or prejudice arose from trial counsel's failure to present a witness at the punishment phase of trial where the defendant strongly opposed having any witnesses testify on his behalf during the punishment phase and the defendant acknowledged same during a colloquy on the record in open court)); *Autry v. McKaskle*, 727 F.2d 358, 360-63 (5th Cir. 1984) (holding a defendant's knowing decisions regarding trial strategy ethically bind defense counsel, even if the defendant chooses not to fight the death sentence at the punishment phase of a capital trial).

The state habeas court evaluated this claim and found that:

11.11.   The decision to keep Mr. Sanders was made based upon [Parr]'s voluntary choice and personal decision, to which his attorneys deferred.

11.12[.]   In the selection of the jury as a whole, and in not striking Mr. Sanders, [Parr] had the effective assistance of counsel as envisioned by the Constitution.

11.13[.]   The selection of Mr. Sanders as a juror, and the actions and decisions of trial counsel pertaining thereto, did not render the adversary process actually or presumptively unreliable.

11.14.   The Convicting Court finds that the adversarial process in this case led to a true and reliable outcome.

11.15.   The Convicting Court did not, would not, and could overrule the decision of [Parr] and his lawyers to accept Sanders as a juror.

11.16.   It is the Convicting Court's personal recollection and opinion that the Convicting Court was then fully satisfied, and now does find that the decision to accept Mr. Sanders was freely, voluntarily and knowingly made by [Parr].

SHR 94.

Because counsel were bound to follow the instructions of their client, the state court's decision was contrary to clearly-established federal law, as set out by the Supreme Court of the United States.  28 U.S.C. § 2254(d).  Accordingly, this claim for relief should also be denied.

18

IV.  **Parr's Claim That the Trial Court Compromised His Right to Self-representation Is Unexhausted and Procedurally Defaulted. In the Alternative, this Claim Is Without Merit.**

Parr claims that the trial court compromised his right to self-representation when it did not admonish him regarding his decision to accept the aforementioned juror. Petition at 24-25; Section III, *supra*. Yet, this claim is unexhausted and procedurally defaulted. In the alternative, this claim is without merit.

A.  **Parr's claim is unexhausted and procedurally defaulted.**

Under 28 U.S.C. Section 2254(b)(1)(A), a state prisoner's application for a federal writ of habeas corpus shall not be granted unless the applicant has exhausted his state court remedies. In order to satisfy the exhaustion requirement, a claim must be presented to the highest court of the state for review. *Deters v. Collins,* 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). For purposes of exhaustion, the Texas Court of Criminal Appeals is the highest court in the state which has jurisdiction to review a petitioner's conviction. Tex. Code Crim. Proc. Ann. art. 44.45 (West 2005); *Richardson*, 762 F.2d at 431. To proceed before the Court of Criminal Appeals, a petitioner must either raise it in his brief on direct appeal or in an application for a post-conviction writ of habeas corpus.

All of the grounds raised in a federal application for writ of habeas corpus must have been fairly presented to the state courts prior to being presented to the federal courts. *Picard*

*v. Connor*, 404 U.S. 270, 275 (1971).  The exhaustion of state remedies doctrine codified in 28 U.S.C. § 2254(b) reflects a policy that has been consistently adhered to by the Supreme Court of the United States and the United States Court of Appeals for the Fifth Circuit. *Picard,* 404 U.S. at 275; *Deters,* 985 F.2d at 793.  Thus, this Court is precluded from reviewing any claims which have not been exhausted.   28 U.S.C. § 2254(b)(1)(A); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 (5th Cir. 1981).

Furthermore, "Texas law requires [state] habeas petitioners to present all of their state habeas claims in their first petition;" therefore, "absent facts giving rise to one of the statutory exceptions, the Texas Court of Criminal Appeals will not entertain a new issue in a successive petition."  *Muniz v. Johnson,* 132 F.3d 214, 221 (5th Cir. 1998); *see also* Tex. Code Crim. Proc. Ann. art. 11.07 § 4(a) (stating that "[i]f a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that" (1) the current claims could not have been raised previously because the factual or legal basis for the claim was unavailable when the original application was filed; or (2) by a preponderance of the evidence, no rational juror could have found the applicant guilty beyond a reasonable doubt but for a violation of the Constitution).

The Texas abuse-of-the-writ doctrine is an "independent and adequate" state procedural rule. *Emery v. Johnson*, 139 F.3d 191, 195-96 (5th Cir. 1997); *Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995) (holding that the Court of Criminal Appeals has strictly and regularly denied state habeas applications for abuse of the writ since 1994). Under the procedural-default doctrine, federal courts are precluded from granting habeas relief where the last state court to consider the claims raised by the petitioner expressly and unambiguously based its denial of relief on an independent and adequate state-law procedural ground. *Coleman*, 501 U .S. at 729-30; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999). When a state court explicitly relies on a procedural bar, a state prisoner may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice. *Coleman*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). A petitioner who fails to satisfy the cause-and-prejudice standard may nonetheless be entitled to habeas relief if he can show that the imposition of the procedural bar would constitute a miscarriage of justice—*i.e.*, that the petitioner is actually innocent of the crime. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

With respect to the instant claim, Parr did not include it in his brief on appeal or his application for a state writ of habeas corpus. Parr did raise his related ineffective-assistance-of-counsel claim in his state habeas application, but he never made a free-standing claim that the trial court had failed to properly admonish him. SHR 14-18. Because Parr failed to

present this claim to the Court of Criminal Appeals, he has deprived this Court of the ability to consider it.

**B.      In the alternative, Parr's claim is without merit.**

Parr claims that he was constructively representing himself when he ordered his attorneys to accept a juror that they deemed unsatisfactory.  Petition at 24-25.  A defendant in a state criminal trial has the right under the Sixth and Fourteenth amendments to proceed without counsel and to represent himself if he elects to do so.  *See Faretta*, 422 U.S. at 819-20 (1975).  But a defendant must "knowingly and intelligently" forgo the benefits of having an attorney represent him.  *Id*. at 835.  In addition, the request to proceed *pro se* must be "clear and unequivocal."  *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991); *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982).  The Fifth Circuit has "strictly construed" this requirement.  *Burton*, 937 F.2d at 133.  Moreover, even if a defendant requests to represent himself, "the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." *Brown*, 665 F.2d at 611.  "In the absence of a clear and knowing election, a court should not quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense."  *Id*. at 610.  Courts must indulge every reasonable presumption against such a waiver.  *Brewer v. Williams*, 430 U.S. 387, 404 (1977).  After asserting his right to proceed

22

*pro se*, a defendant may later waive that right.  *Johnson v. McCotter*, 803 F.2d 830, 834 (5th Cir. 1986).

The question of whether a defendant invoked his right of self-representation is a mixed question of law and fact.  *United States v. Lopez-Osuna*, 242 F.3d 1191, 1198 (9th Cir. 2000); *Fields v. Murray*, 49 F.3d 1024, 1031 (4th Cir. 1995); *Strozier v. Newsom*, 926 F.2d 1100, 1104 (11th Cir. 1991).  *Cf. Brewer*, 430 U.S. at 404 (stating that question of whether defendant waived counsel "not a question of historical fact, but one which . . . requires 'application of constitutional principles to the facts as found,'" quoting *Brown v. Allen*, 344 U.S. 443, 404 507 (1953)).  This Court reviews the decision of a state court on such mixed questions using the unreasonable-application standard set out in § 2254(d)(1).

In the instant case, Parr did not make an unequivocal request.  In fact, Parr did not make *any* request.  Parr never stared that he wanted to fire his attorneys and proceed on his own.  9 RR 89-90.  Accordingly, the Court should deny Parr's unexhausted and meritless claim.

## V.   The Trial Court Acted Properly in Dismissing a Vacillating Juror.

In his fourth claim for relief, Parr argues that the trial court improperly dismissed a juror, Roderick Dylan Garnett, when Garnett gave inconsistent answers to questions regarding his ability to truthfully answer the special issues and recommend the death penalty. Petition at 26-32.

23

**A.** **Facts**

The Court of Criminal Appeals set forth the facts relating to this claim as follows:

> When initially questioned by the prosecutor, Garrett explained that he could never recommend a death sentence and would always answer the special issues so that a life sentence would result. He explained that the death penalty was contrary to his religious beliefs. However, when defense counsel questioned Garrett, he agreed that he could put his religious beliefs aside and recommend the death penalty. Thereafter, the prosecutor questioned Garrett about his contradictory responses in the following exchange:

Q. And so if you were selected as a juror, the Judge would give you an oath that says that you must follow the law.

A. Uh-huh.

Q. Okay. And the law would require that you base your verdict on the evidence. But your personal convictions, as I understand them, would require you to say, I don't care what the evidence says, I'm not going to issue a death penalty.

A. (Nodded head.)

Q. You're shaking your head yes that you agree with that?

A. Uh-huh.

Q. Okay. So you see where there is a conflict between the law and your personal convictions which [are] most precious to you? Your personal convictions or the law?

A. On my own, I mean, because we have laws, but then, you know, I believe in - -

Q. You've got to live with yourself, right?

A. Yes, sir.

24

Q.  So your personal convictions are more important to you than the law?

A.  We've got to have the law.

Q.  Well, which is it?

A.  I don't know.

Q.  Are you going to follow your belief - -

A.  I believe in the law.  I believe in the law.

Q.  - - that you can't give the death penalty?

A.  I believe in the law but I'm still not - - I couldn't do one for the death penalty.  That's just not - - I was brought up better than that.

   Even after this exchange, Garrett continued to vacillate in his answer. When defense counsel questioned Garrett about the issue, he reiterated that he could answer the special issues in a way that would result in the death penalty in the "worst of the worst" cases.  Subsequently, in response to the trial court's question: "Would you answer [the special issue] truthfully even though you knew that that truthful answer would lead to the Court sentencing someone to death?" Garrett answered: "Yes, I could do that." However, in response to the prosecutor's later question if he could answer the special issues in a way that would result in the death penalty, Garrett answered that he could never recommend the death penalty.  Finally, when defense counsel asked if he could be truthful in answering the special issues, Garrett answered: "Yes, I'll be truthful, to the best of my ability I'll be truthful."

   The State challenged Garrett for cause arguing that he had vacillated back and forth so many times on this issue that he could not be a juror in this case.  The trial judge found that Garrett would not be able to follow the law and granted the challenge for cause.

*Parr*, No. 74,973 at 6-8 (paragraphs added).

25

### B.    Standard of Review

Under the Sixth Amendment, a prospective juror may not be excluded for cause merely because he voices general opposition to capital punishment. *Witherspoon v. Illinois*, 391 U.S. 510, 521-522 (1968).  But a prospective juror may be excused for cause if his views regarding the death penalty would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas,* 448 U.S. 38, 45 (1980); *accord Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quoting *Adams*).  In a capital case, a trial court must grant a challenge for cause on a prospective panelist who, for example, states he would automatically impose a death sentence without considering individual aggravating and mitigating circumstances. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (citing *Ross v. Oklahoma*, 487 U.S. 81, 84 (1988)).  A potential juror, however, may be rehabilitated by counsel or court, and if it is apparent that the juror could follow the law in accordance with his oath and the court's instructions, then he may serve on the jury, and a challenge for cause would be properly denied.

A trial judge's finding of bias during voir dire is a determination of fact, subject to a presumption of correctness on collateral review. *Witt*, 469 U.S. at 428, 430; *Fuller v. Johnson*, 114 F.3d 491, 500-01 (5th Cir. 1997) (juror bias finding entitled to presumption of correctness under both former 28 U.S.C. § 2254(d) and amended 28 U.S.C. § 2254(e)(1)). The same holds true for a "state trial court's implicit finding of impartiality in its denial of

the petitioner's challenge for cause." *Montoya v. Scott*, 65 F.3d 405, 419 n.29 (5th Cir. 1995).

The presumption of correctness applies because "[t]he trial judge is uniquely qualified to make determinations of credibility as to prospective jurors because of his ability to observe their demeanor, inflection, and other mannerisms which cannot be conveyed in a transcript." *Farris v. Johnson*, 967 F. Supp. 200, 202 (N.D. Tex. 1997), *affirmed*, 144 F.3d 50 (5th Cir. 1998); *Witt*, 469 U.S. at 428 n.9; *Williams v. Collins*, 16 F.3d 626, 633 (5th Cir. 1994). But the trial court need not detail its reasoning or explicitly conclude that a prospective juror is biased, so long as it is evident from the record. *Drew v. Collins*, 964 F.2d 411, 416 (5th Cir. 1992) (citing *Witt*, 469 U.S. at 430).

### C.   The Court of Criminal Appeals correctly deferred to the decision of the trial court.

The Court of Criminal Appeals evaluated this claim on direct review and found that:

> The trial court found that Garrett was unable to follow the law and fulfill his duty as a juror because of his views on the death penalty. *Wainwright v. Witt*, 469 U.S. 412, 105 (1985). [Parr] argues that the record does not support the trial court's finding because it shows that even though Garrett was strongly opposed to the death penalty, he indicated that he could follow the law in accordance with his oath.

> Veniremembers who can set aside their beliefs against capital punishment and honestly answer the special issues are not challengeable for cause. *Id.* at 424. Veniremembers are challengeable for cause if their views regarding the death penalty would prevent or substantially impair the performance of their duties in accordance with their instructions and oath. *Id.*

> We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to

27

evaluate a veniremember's demeanor and responses. *Colburn v. State*, 966 S.W.2d 511, 517 (Tex. Crim. App. 1998). We will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident. *Id.* When a veniremember's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision. *Id.* We will not second guess the trial court when the veniremembers are persistently uncertain about their ability to follow the law. *Id.*

[. . .]

The trial judge's ruling is supported by the record. Because Garrett vacillated as to his ability to follow the law, we defer to the decision of the trial judge, who was in a position to actually see and hear him in the context of voir dire. The trial court did not abuse its discretion in granting the State's challenge for cause. [Parr]'s fifth point of error is overruled.

*Parr*, No. 74,973 at 6-8 (paragraphs added).

Thus, the Court of Criminal Appeals correctly deferred to trial court, which was more appropriately situated to observe the juror in question. The Court of Criminal Appeals' determination, and, in turn, the trial court's determination, are both subject to a presumption of correctness on collateral review. *Witt*, 469 U.S. at 428, 430; *Fuller*, 114 F.3d at 500-01. Parr has presented no additional evidence and has not satisfied his burden of proof under the AEDPA. As stated earlier, this Court cannot grant habeas corpus relief unless it determines that the state court's determination was in conflict with clearly-established federal law as determined by the Supreme Court or "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). Because Parr has not made this showing, his claim must be denied.

**VI.    The Constitution Does Not Require Extraneous Offenses Offered at the Punishment Phase of a Capital Trial Be Proven Beyond a Reasonable Doubt.**

In his fifth claim for relief, Parr contends that the trial court was obligated to instruct the jury at the punishment phase that the State must prove extraneous offenses beyond a reasonable doubt before the offenses could be considered by the jury.  Petition at 32-40.  He suggests that the admission of evidence of prior unadjudicated offenses violated his rights under the Due Process Clause of the Fourteenth Amendment.  *Id*.

The Court of Criminal Appeals evaluated this claim and found that:

> [Parr] fails to cite to any authority in support of his claim, and thus it is inadequately briefed.  Tex.R.App. P. 38.1.  Further, [Parr]'s claim is without merit.  Article 37.071 does not require that the State prove all elements of an extraneous offense beyond a reasonable doubt.  *See* Art. 37.071; *Adanandus v. State*, 866 S.W.2d 210, 233 (Tex. Crim. App. 1993).  We have held that the admissibility of extraneous offenses under Article 37.071 does not violate the Eighth Amendment, because the State retains the burden to prove the special issues beyond a reasonable doubt.  *Adanandus*, 866 S.W.2d at 233.  We have also held that the admissibility of extraneous offenses does not violate the Fourteenth Amendment.  *Id*.  [Parr]'s ninth point of error is overruled.

*Parr*, No. 74,973 at 6-8

Parr acknowledges that there is no federal constitutional prohibition on the introduction during punishment of evidence showing the defendant has engaged in extraneous, unadjudicated criminal conduct.  Petition at 36; *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).  However, Parr asserts that this "is not the touchstone of Petitioner's claim."  Petition at 36.  Rather, he claims that the State failed to prove beyond a reasonable

doubt his unadjudicated offenses.  *Id*.  This Circuit, however, has consistently found that the Constitution does not require unadjudicated extraneous offenses be proved beyond a reasonable doubt.  *Brown*, 419 F.3d at 376-77 (the Constitution does not require the defendant's commission of unadjudicated extraneous offenses be proven beyond a reasonable doubt before evidence of same may be admitted at a capital trial's punishment-phase); *Hughes v. Dretke*, 412 F.3d 582, 593 (5th Cir. 2005) ("the Supreme Court has never held that the federal constitution requires a state to prove an extraneous offense beyond a reasonable doubt"); *Harris v. Cockrell*, 313 F.3d 238, 246 (5th Cir. 2002) (the introduction of evidence of extraneous offenses, even those of which the defendant has been acquitted, does not violate due process and there is no constitutional requirement that extraneous offenses offered at the punishment-phase of a capital trial be proven beyond a reasonable doubt); *Vega v. Johnson*, 149 F.3d 354, 359 (5th Cir. 1998) (extraneous offenses offered at the punishment-phase of a capital trial need not be proven beyond a reasonable doubt and may be admitted even after the defendant has been acquitted of those charges).

Because Parr has failed to show that the state court's rejection of this claim is an objectively unreasonable application of relevant precedent, this Court should deny relief.  28 U.S.C. § 2254 (d).

30

**VII.   The Evidence Was Sufficient to Show That Parr Constitutes a Future Danger.**

In his sixth claim, Parr claims that he is attacking the sufficiency of the evidence against him, but in reality he mostly repeats his later claims that the future dangerousness special issue is unconstitutionally vague.  Petition at 40-49; *see* Section VIII, *infra*.  Yet, to the extent that the Court construes this as a proper attack on the sufficiency of the evidence, this claim is without merit.

When a petitioner asserts that the evidence presented to the state court was insufficient to find future dangerousness, the limited question before a federal habeas court is "whether the [Court of Criminal Appeals'] decision constitutes an 'unreasonable application' of *Jackson* [*v. Virginia*, 443 U.S. 307, 323 (1979)]." *Martinez v. Johnson*, 255 F.3d 229, 241 n. 21 (5th Cir. 2001)*; Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citing *Jackson*). Under *Jackson*, a conviction is constitutional if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319.

The Court of Criminal Appeals directly cited *Jackson* and framed its analysis under that constitutional standard.  *Parr*, No. 74,973 at 2-3.  The Court of Criminal Appeals further noted that, under Texas law, that the circumstances of the charged offense may alone be sufficient to support an affirmative finding of future dangerousness.  An escalating pattern of disrespect for the law, a lack of remorse or willingness to commit future violent acts (in

31

prison or in the free world) can also support a finding that a defendant constitutes a future danger. *Id*. After evaluating the evidence in the light most favorable to the prosecution, the Court of Criminal Appeals concluded that a rational trier of fact could find the essential elements of future dangerousness beyond a reasonable doubt. *Id*. at 5.

This finding is supported by the record. At punishment, the State presented evidence showing numerous convictions, some violent. The State also showed that there was evidence that he was involved in a drive-by shooting in 2002, committed an assault in 2003, and was involved in the murder of Ronnie Zarazua in 2001. 20 RR 47, 49, 52-53, 90, 123-48. Parr had no remorse for either of his killings, and expressed to other individuals that he had killed Zarazua to prevent him from testifying against a friend. *Id*. at 123-24, 131.

Giving due deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weight the evidence, and to draw reasonable inferences from basic facts to ultimate facts," it is clear that the evidence presented at Parr's trial was enough to support his conviction of for capital murder. *Jackson*, 443 U.S. at 319. The instant claim of insufficient evidence is nothing more than an improper attempt by Parr to have this Court second-guess the jury's credibility choices, implicit factual findings, and resolution of conflicts in evidence. There is no question that the state courts' conclusion that the evidence was sufficient to support the finding that Parr is a future danger is entitled to deference by this Court and did not result in a decision that was contrary to, or involve an unreasonable

application of, clearly-established federal law, as determined by the Supreme Court of the United States.  As such, relief is barred by the AEDPA standard of review.

## VIII.  The Trial Court Was Not Required to Define All Terms in its Instructions.

In his sixth, seventh, eighth, and ninth claims for relief, Parr claims that he was denied his right to due process of law and freedom from cruel and unusual punishment because the Texas death penalty statute used inherently vague terms that allow the arbitrary imposition of the death penalty.  Petition at 49-54.  Specifically, Parr claims that the trial court's failure to define the terms "probability," "criminal acts of violence," and "society" violated the constitutional requirement that each statutory aggravating circumstance genuinely narrow the class of persons eligible for the death penalty and reasonably justify the imposition of the most severe penalty available.  *Id*.  Thus, Parr argues, it is impossible to determine if the evidence was sufficient to justify the jury's finding that he was a future danger.  However, this argument incorrectly interprets the Texas death penalty process and lacks merit under clearly established circuit precedent..

In setting forth the constitutional requirements of the capital sentencing process, the Supreme Court in *Tuilaepa v. California*, 512 U.S. 967, 971-72 (1994), made a distinction between two types of sentencing decisions: the eligibility decision and the selection decision. The eligibility decision fits the crime within a defined classification that narrows the class of persons eligible for the death penalty by utilizing at least one aggravating factor that both

(1) applies only to a subclass of persons convicted of murder and (2) is not unconstitutionally vague. *Tuilaep*, 512 U.S. at 972.  In contrast, the selection decision "requires individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure an assessment of the defendant's culpability." *Id*.  Noting the potential tension between these two inquiries, the Court explained the different requirements as follows: "Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment." *California v. Ramos*, 463 U.S. 992, 1008 (1983).  Indeed, the sentencer "may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Woods v. Cockrell*, 307 F.3d 353, 359 (5th Cir. 2002) (citations omitted).

Noting these distinct decisions, the Fifth Circuit has determined that the Texas capital penalty process places the eligibility decision in the guilt-innocence phase of the trial, and the selection decision in the punishment phase. *Turner v. Quarterman*, 481 F.3d 292, 300 (5th Cir. 2007).  Since the complained of terms are used in the selection decision rather than the eligibility decision, these terms are not subject to the same definitional requirements as terms that are used in the eligibility decision.

This Circuit has consistently approved the use of the terms "probability," "criminal acts of violence," and "continuing threat to society" without definition over objections that they are unconstitutionally vague as used in these sentencing instructions. *See Turner*, 481 F.3d at 299-300 (holding terms "probability," "criminal acts of violence," and "continuing threat to society" not unconstitutionally vague); *Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005) (holding that terms "probability," "criminal acts of violence," and "continuing threat to society" needed no definition); *Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999) (upholding use of term "probability"); *Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996) (overruling complaint that Texas punishment special issues unconstitutionally vague); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993) (upholding use of terms "deliberately," "probability", "criminal acts of violence," and "continuing threat to society" as having a "common-sense core of meaning that criminal juries should be capable of understanding"); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir. 1993) (upholding use of terms "deliberately," "probability," and "society" without definition); *Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir.1987) (upholding use of term "deliberately" as its "common meaning is sufficiently clear to allow the jury to decide the special issues on punishment"); *Milton v. Procunier*, 744 F.2d 1091, 1095-96 (5th Cir. 1984) (upholding the terms "deliberately," "probability," and "criminal acts of violence" as having "plain meaning of sufficient content" to warrant their inclusion in sentencing instructions).

Again, Parr cannot show the state court's adjudication of his claim was unreasonable as his claims flatly contradicted by circuit precedent.  Accordingly, this claim for relief should also be denied.

## IX.    Parr's Claim That the 12/10 Rule Is Unconstitutional Is Meritless.

In his tenth claim, Parr complains that he was denied his right to due process of law and had cruel and unusual punishment imposed upon him because of Teaxs' 12/10 rule. Petition at 54-57.  The 12/10 rule requires at least ten jurors to agree in order for the jury to return a negative answer to the punishment special issues and twelve to deliver an affirmative answer.  Tex.Code Crim. Proc. Ann. art. 37.071 § 2(d)(2).  Parr argues that the 12/10 Rule creates a danger that jurors will reasonably believe their votes in favor of a life sentence are worthless unless nine other jurors concur, and therefore cause them to join a majority of jurors and answer the special issues in a manner that requires a sentence of death. Yet, the Texas Court of Criminal Appeals addressed this claim and found that it was without merit. *Parr*, No. 74,973 at 11-12.

Parr relies upon *Mills v. Maryland*, 486 U.S. 367 (1988), which overturned a death sentence because of jury instructions that created a substantial probability that jurors thought they were precluded from considering any mitigating evidence unless they unanimously agreed on the existence of one or more particular mitigating circumstances.  In *Mills*, the jury was instructed to first unanimously determine whether certain specific aggravating and

mitigating factors existed, marking "yes" or "no" beside each listed factor, and then to weigh those factors in determining whether to assess death. The Supreme Court found a substantial probability that jurors would believe that they were precluded from considering any mitigating factors unless all 12 jurors agreed on the existence on the same specific factors, and result in a virtually automatic death sentence even where the jurors may otherwise have concluded that death was inappropriate. *Id.* at 373-74, 377-78. That instruction is "wholly dissimilar" to the one used in Texas. *Woods v. Johnson*, 75 F.3d 1017, 1036 (5th Cir. 1996).

The Supreme Court has interpreted *Mills* to mean that "each juror [must] be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death." *McKoy v. North Carolina*, 494 U.S. 433, 442-43 (1990); *Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994). In concluding that the prohibition in *Mills* did not apply to the Texas instructions, the Fifth Circuit in *Jacobs* observed, "[u]nder the Texas system, all jurors can take into account any mitigating circumstance. One juror cannot preclude the entire jury from considering a mitigating circumstance." *Jacobs*, 31 F.3d at 1329.

The Fifth Circuit Court of Appeals has also found this *Mills* argument to be barred by the nonretroactivity rule of *Teague*. *See Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000); *Webb v. Collins*, 2 F.3d 93 (5th Cir. 1993). The Court of Appeals went on to observe

that the Constitution creates no right to instruct the jury on potential deadlock.  *See id*. at 897

n. 5 (citing *Jones v. United States*, 527 U.S. 373 (1999)).

As observed in *Jacobs*, the Texas special issues do not reflect the constitutional

violation presented in *Mills* since each juror in Texas is fully allowed to consider any

mitigating evidence and there is no requirement that any agree on precisely what

circumstance may be mitigating.  *Jacobs*, 31 F.3d at 1329.  These arguments would constitute

an extension of *Mills* at best, and have already been considered a new rule in this Circuit

which would be barred by the nonretroactivity principles in *Teague*.  *Jacobs*, 31 F.3d at 1329;

*Webb*, 2 F.3d at 95.  Therefore, Parr's tenth claim for relief is barred by *Teague*, and in the

alternative lacks merit, and should be denied.

**X.  Parr's Claim That Execution by Texas' Lethal Injection Protocol Constitutes Cruel and Unusual Punishment Is Unexhausted and Procedurally Defaulted.  In the Alternative, Parr's Claim Is Without Merit.**

In his eleventh claim for relief, Parr asserts that execution by Texas' lethal injection

protocol constitutes cruel and unusual punishment.  Petition at 58.  In support of his claim,

he refers the Court to the recent certorarai grant and argument in *Baze v. Rees*.  *Id*. (citing

*Baze v. Rees*, 2007 WL 2075334 (U.S. Sept. 25, 2007) (order granting writ of certiorari)).

Yet, this claim is unexhausted and procedurally defaulted, as well as wholly without merit.

### A.    This claim is unexhausted and procedurally defaulted.

Parr acknowledges that this claim was not presented to the Texas Court of Criminal

Appeals.  Petition at 59.  As such, it is unexhausted and procedurally defaulted.  28 U.S.C.

§§ 2254(b), (c) (2002); *Vega*, 149 F.3d at 362; *Nobles*, 127 F.3d at 422 (holding that

defaulted claims had yet to be presented to the state courts; determining the claims were

unexhausted and procedurally defaulted; and concluding that the standard for avoiding a state

citation for abuse of the writ could not be satisfied).

Federal review of a claim is procedurally barred if the last state court to consider the

claim based its denial of relief expressly and unambiguously on a state procedural default.

*Coleman*, 501 U.S. at 729; *Harris*, 489 U.S. at 263; *Amos*, 61 F.3d at 338. Where a state

court has explicitly relied on a procedural bar, a petitioner may not obtain federal habeas

corpus relief absent a showing: (1) of cause for the default and actual prejudice that is

attributable to the default; or (2) that the federal court's failure to consider the claim will

result in a miscarriage of justice.  *Coleman*, 501 U.S. at 750.

Parr argues that his failure to exhaust this claim because counsel at all levels could not

have had the foresight to recognize this issue and present it to the Texas courts.  Petition at

60.  But the Director observes that Parr was convicted in 2004, and the argument against the

lethal injection protocol far precedes that date.[4]  *See, e.g., Woolls v. McCotter,* 798 F.2d 695,

---

[4]      The Fifth Circuit has held that a death-sentenced inmate may challenge the method of execution as soon as his sentence becomes final at the expiration of direct review.  *Smith v.*

697-98 (5th Cir. 1986); *Ex parte Granviel,* 561 S.W.2d 503, 508 (Tex. Crim. App. 1978);

*State v. Webb,* 750 A.2d 448, 451 (Conn. 2000) (all discussing expert testimony regarding

the effect of each chemical agent—coinciding with those used in Texas—and the result of

introducing those agents in a similarly coinciding specific dosage and order).  Moreover,

when counsel's ineffectiveness is urged as cause for a procedural default, it must be

presented as a separate ground for relief.  *Murray v. Carrier,* 477 U.S. 478, 489-90 (1986).

The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed

to raise the claim despite recognizing it, does not constitute cause for a procedural default.

*Id.* at 486*; Smith v. Murray,* 477 U.S. 527, 533 (1986).

> **B.     The method of administering lethal injection in Texas does not constitute cruel and unusual punishment.**

Parr argues that the lethal injection method of execution constitutes cruel and unusual

punishment.  Petition at 58-59.  But without a strong showing from him that Texas' lethal

injection method of execution is cruel and unusual under the Eighth Amendment, he has no

viable claim warranting relief.  Parr has presented no evidence whatsoever.

The government may not impose "cruel and unusual punishments," U.S. CONST.,

amend. VIII, and in the execution of a death sentence it may not inflict "unnecessary pain."

*Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 464 (1947).  A method of execution

---

*Johnson,* 440 F.3d 262, 263 (5th Cir. 2006);  *Neville v. Johnson,* 440 F.3d 221, 222-23 (5th Cir. 2006); *White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005).

amounts to cruel and unusual punishment where it creates a substantial risk of wanton and unnecessary infliction of pain, torture, or lingering death. *State v. Webb,* 750 A.2d 448, 455 (Conn. 2000) (citing *Campbell v. Wood,* 18 F.3d 662, 683 (9th Cir. 1994); *Resweber,* 329 U.S. at 464; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)).

Based on the rejection of this identical claim in sister courts, both state and federal, Parr's complaint is insufficient on its face to show an Eighth Amendment violation. He does not allege or demonstrate that the chemicals used in lethal injection will cause suffering; he only argues suffering is a *possibility.* Such a showing is not sufficient. *See, e.g., Cooper v. Rimmer,* 379 F.3d 1029, 1031-33 (9th Cir. 2004) (concluding that inmate fell short of showing unnecessary risk of unconstitutional pain or suffering and quoting district court's determination based on expert testimony that inmate "has done no more than raise the possibility that California's lethal-injection protocol risks an unconstitutional level of pain and suffering"); *Reid v. Johnson,* 333 F. Supp. 2d 543, 551 (E.D. Va. 2004) ("the probability that the inmate would be conscious of the physical effects of pancuronium is less than 1/100 of one percent" and finding that the risk of pain is "so remote as to be nonexistent"); *Webb,* 750 A.2d at 455 (concluding based on expert testimony that there is no reason to believe that under routine execution inmate would experience anything more than insertion of intravenous injection followed by unconsciousness); *Ex parte Granviel,* 561 S.W.2d at 508 (rejecting challenge to state's use of sodium thiopental and discussing expert testimony that

41

drug takes effect within moments); *see also Kelly v. Lynaugh,* 862 F.2d 1126, 1135 (5th Cir. 1988); *Woolls,* 798 F.2d at 697-98; *Sims v. State,* 754 So.2d 657 (Fla. 2000).

Parr offers only speculation that the procedure would be painful and risky. As such, relief is not warranted. Even in the light of the certiorari grant in *Baze*, Parr's claim must fail. The *Baze* case came to the Supreme Court after a lengthy trial in state court with many witnesses and substantial evidence. Parr presents no such evidence here and he only speculates that the Texas protocol is flawed. This claim is conclusory at best, and it does not follow from the Supreme Court's determination in *Baze* that Parr is entitled to relief.

## CONCLUSION

For the above reasons, the Director respectfully requests that the Court deny Parr's petition for a writ of habeas corpus with prejudice and *sua sponte* deny a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that the district court has the power to *sua sponte* deny a certificate of appealability without prior briefing and argument by counsel).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ERIC J.R. NICHOLS
Deputy Attorney General
for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation
Division


 /s/ Stephen M. Hoffman

*Attorney-In-Charge   STEPHEN M. HOFFMAN*
Assistant Attorney General
State Bar No. 24048978

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936-1400
(512) 936-1280 (FAX)
Stephen.Hoffman@oag.state.tx.us

ATTORNEYS FOR RESPONDENT

43

## CERTIFICATE OF SERVICE

I, STEPHEN M. HOFFMAN, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent's Answer with Brief in Support has been served by this Court's e-noticing system, on this the 4th day of February, 2008, addressed to:

Stan Schwieger, Esq.
600 Austin Ave., Suite 12
P.O. Box 975
Waco, TX 76703

 /s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General