IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

CARROLL JOE PARR,

                Petitioner,

        VS.                               Cause No. W-06-CA-317

NATHANIEL QUARTERMAN,            DEATH PENALTY CASE
Director, Texas Department of Criminal
Justice, Institutional Division,

                Respondent

## PETITIONER'S RESPONSE TO THE
## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

COMES NOW Carroll Joe Parr, Petitioner in the above captioned cause and

pursuant to 28 U.S.C. § 2254 submits to this Court his Petitioner's Response to the

Respondent's Answer with Brief in Support, as follows:

## PROCEDURAL HISTORY AND APPLICABLE LAW

### A.    *Procedural history.*

Petitioner was charged by indictment with the felony offense of Capital Murder.

He entered a plea of not guilty and a jury trial commenced on May 3, 2004, in the 54th

District Court of McLennan, Texas, the Honorable George H. Allen, presiding. The jury

found Mr. Parr guilty, and the case proceeded to the punishment phase. There, the jury

answered special issue number one affirmatively, and then found there were no mitigating

factors sufficient to warrant a life sentence.  Based on those findings, Petitioner was

sentenced to death by lethal injection.  In an unpublished opinion, the Texas Court of Criminal Appeals affirmed the capital murder conviction and death sentence.  Parr v. State, 2006 WL 1544742, *4 (Tex. Crim. App. June 7, 2006) (not designated for publication).  Mr. Parr timely filed petition for a writ of habeas corpus in the convicting court and the Texas Court of Criminal Appeals denied relief.  Ex parte Parr, 2006 WL 2879762, *1 (Tex. Crim. App. Oct. 11, 2006).  Petitioner filed his federal petition for a writ of habeas corpus on October 4, 2007.  Respondent filed their answer on February 4, 2008.

### B.   Governing law.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was decided on the merits in state court only if the state court's decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in our cases." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  It has also explained that a state court decision involves an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case.  Taylor,

529 U.S. at 407-08.  The reviewing court may only issue the writ under these circumstances if the state court's application of clearly established law was "objectively unreasonable."  Taylor, 529 U.S. at 409.

As the Respondent has moved for summary judgment, Rule 56 of the Federal Rules of Civil Procedure governs and also applies to habeas corpus cases.  See Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  However, this rule applies only to the extent that the rule is consistent with the AEDPA.  See Rule 11 of Rules Governing § 2254 Cases.  Summary judgment is proper under Rule 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Although Rule 56 generally requires the court to construe all facts in the light most favorable to the nonmoving party, the AEDPA requires that in habeas cases the court presume all facts found by the state court as true absent clear and convincing evidence to the contrary.  See Woods v. Cockrell, 307 F.3d 353, 356-57 (5th Cir. 2002) (citations omitted); 28 U.S.C. § 2254(e)(1); Kessel v. Quarterman, 2008 WL 2596662, *2 (S.D. Tex. 2008) (slip op.).

## RESPONSIVE TO RESPONDENT'S ROMAN NUMERAL II

## PARR'S *PENRY II* CLAIM IS MERITLESS.

Although arriving on a different procedural basis, the Texas death scheme as outlined in the Code of Criminal Procedure still does not meet the dictates of Penry II.

See <u>Penry v. Johnson</u>, 532 U.S. 782 (2001) (hereinafter <u>Penry II</u>).  As such the

Respondent's claim that Mr. Parr's first issue is "meritless"[1] can be set aside.

> **A.      The Supreme Court has spoken clearly on the constitutional requirements in a capital punishment concerning mitigation evidence.**

The Supreme Court has long recognized that sentencing juries should have a

vehicle to give purposeful attention and consequence to mitigating evidence.  Beginning

in 1976, well before the Court's decision in <u>Penry I</u>[2], the cases had established that

sentencing juries must be able to give meaningful consideration and effect to all

mitigating evidence that might provide a basis for refusing to impose the death penalty on

a particular individual, notwithstanding the severity of his crime or his potential to

commit similar offenses in the future.  <u>Proffitt v. Florida</u>, 428 U.S. 242 (1976), <u>Jurek v.

Texas</u>, 428 U.S. 262 (1976), <u>Woodson v. North Carolina</u>, 428 U.S. 280 (1976).  Each of

these cases identified the background principles applied in later cases to evaluate specific

rules inhibiting the jury's ability to give meaningful effect to such mitigating evidence.

<u>Abdul-Kabir v. Quarterman</u>, 127 S. Ct. 1654, 1664 (2007).  Just two years later, the Court

announced "that the Eighth and Fourteenth Amendments require that the sentencer, in all

but the rarest kind of capital case, not be precluded from considering, as a mitigating

factor, any aspect of a defendant's character or record and any of the circumstances of the

offense that the defendant proffers as a basis for a sentence less than death." <u>Lockett v.

---

[1]      Resp't Answer at 10.

[2]      <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989) (hereinafter "<u>Penry I</u>").

Ohio, 438 U.S. 586, 604 (1978) (plurality op.).  The Court widened its stance on

mitigation evidence, holding that the mere availability or presentation of this evidence, in

whatever form was not constitutionally sufficient.  The jury had to be able, through its

verdict to give "meaningful consideration by the jury."  See, e.g., Franklin v. Lynaugh,

487 U.S. 164, 172, 177, 183 (1988), Hitchcock v. Dugger, 481 U.S. 393 (1987).  Later,

the Court highlighted Justice O'Connor's concurring opinion in Franklin as summarizing

the existing law:

> In my view, the principle underlying Lockett, Eddings, and Hitchcock is that
> punishment should be directly related to the personal culpability of the
> criminal defendant.   [E]vidence about the defendant's background and
> character is relevant because of the belief, long held by this society, that
> defendants who commit criminal acts that are attributable to a disadvantaged
> background, or to emotional and mental problems, may be less culpable than
> defendants who have no such excuse . . . Thus, the sentence imposed at the
> penalty stage should reflect a reasoned moral response to the defendant's
> background, character, and crime.  In light of this principle it is clear that a
> State may not constitutionally prevent the sentencing body from giving effect
> to evidence relevant to the defendant's background or character or the
> circumstances of the offense that mitigates against the death penalty.  Indeed,
> the right to have the sentencer consider and weigh relevant mitigating evidence
> would be meaningless unless the sentencer was also permitted to give effect
> to its consideration.  Under the sentencing procedure followed in this case the
> jury could express its views about the appropriate punishment only by
> answering the special verdict questions regarding the deliberateness of the
> murder and the defendant's future dangerousness.  To the extent that the
> mitigating evidence introduced by petitioner was relevant to one of the special
> verdict questions, the jury was free to give effect to that evidence by returning
> a negative answer to that question. If, however, petitioner had introduced
> mitigating evidence about his background or character or the circumstances of
> the crime that was not relevant to the special verdict questions, or that had
> relevance to the defendant's moral culpability beyond the scope of the special
> verdict questions, the jury instructions would have provided the jury with no
> vehicle for expressing its reasoned moral response to that evidence.

Abdul-Kabir, 127 S. Ct. at 1667-68 (2007) (citing Franklin, 487 U.S. at 183-85
(O'Connor, J. concurring) (internal citations omitted)).

Specifically invalidating the then existing Texas death statute, the Court noted that the

absence of an appropriate instruction directing the "jury to consider fully" mitigating

evidence as it bears on the extent to which a defendant is undeserving of a death sentence

invalidated the Texas law.  Penry, 492 U.S. at 323.

     Without further detailing the legal landscape, it is safe to say that the current state

of the law is clear.  Once an inmate meets the relevance step, "sentencing juries must be

able to give meaningful consideration and effect to all mitigating evidence that might

provide a basis for refusing to impose the death penalty on a particular individual,

notwithstanding the severity of his crime or his potential to commit similar offenses in the

future."  Abdul-Kabir, 127 S. Ct. at 1664.  "[W]hen the defendant's evidence may have

meaningful relevance to the defendant's moral culpability 'beyond the scope of the

special issues,' a mitigation instruction is required."  Abdul-Kabir, 127 S. Ct. at 1668

n.14.  Simply, "the jury must be allowed not only to consider such evidence, or to have

such evidence before it, but respond to it in a reasonable, moral manner and to weigh such

evidence in its calculus of deciding whether a defendant is truly deserving of death."

Brewer v. Quarterman, 127 S. Ct. 1706, 1714 (2007).  The Fifth Circuit recently applied

the Abdul-Kabir/Brewer reading of Penry jurisprudence in Coble v. Quarterman, 496

F.3d 430, 446 (5th Cir. 2007).  The Fifth Circuit in Coble found that the jury may have

been unable to consider the major mitigating thrust of the defendant's evidence of a

troubled childhood, problems after military service, volunteer service, good relationship with others, post-traumatic stress disorder, and bipolar disorder.  See Coble, 496 F.3d at 447-48.

> **B.**     ***The instructions in this matter still do not give full effect to the mitigation evidence.***

As set forth in the Respondent's brief, the two special issues in the punishment charge are set forth below:

> **Special Issue No. 1**:  Is there a probability that the defendant, Carroll Joe Parr, would commit criminal acts of violence that would constitute a continuing threat to society?

> **Special Issue No. 2**:  Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

Resp't Answer at 111-12 (citing 2 CR 320-22).

As such, as in Coble, the trial court fundamentally and reversibly erred in charging the jury in this fashion by sending mixed signals to the jury and failing to allow them to fully give effect to the vast amount of mitigation evidence presented by Mr. Parr.[3]  The precise problem presented in the second special issue is that the jury must conduct a

---

[3]      Petitioner notes that the State did not contest that the mitigation evidence presented by Mr. Parr evidence constituted "relevant mitigating evidence."  See Coble, 496 F.3d at 446 (5th Cir. 2007) ("All of Coble's evidence is mitigating in the sense that it might serve as a basis for a sentence less than death.").  A summary of the mitigation evidence is found at in Mr. Parr's initial filing.  Pet'r Writ of Habeas Corpus at p. 6-18.

balancing act between the mitigating evidence against circumstances militating in favor of the death penalty in order to determine if they were sufficient under the mitigation special issue.  In effect, this instruction set forth a definition of what would be sufficient as a mitigating circumstance or mitigating circumstances which was not constitutionally authorized.  This prevented the jury from giving independent effect to the circumstances set out.

> ### *1.      This instruction is contrary to the continuing line of Supreme Court instructions.*

In Penry II, the Supreme Court addressed a judicially-crafted response to the defect in Texas law identified in Penry I.  In Penry I, the Supreme Court held that the then existing statutory special issues did not provide an adequate mechanism for the jury to give effect to mitigating factors which could justify the assessment of a life sentence rather than the death penalty.  See Penry I, 492 U.S. at 322-28.  The original concept in Penry I was that the statutory instructions were inadequate, even if mitigating evidence might fit within a statutory special issue, if the introduction of such evidence was a "two-edged sword," *i.e.* if the evidence could also have an aggravating effect.  Penry I, 492 U.S. at 323-24.

In Penry II, a supplemental instruction was given that basically told the jury that it should show its finding of sufficient mitigating evidence by converting what otherwise would be a "Yes" answer to one of the special issues to a "No" answer.  Penry II, 532 U.S. at 799.  This method was deemed a "nullification instruction" because the answer

which would otherwise fit a special issue question would be "nullified" for the sake of giving effect to mitigating evidence.  Penry II, 532 U.S. at 799.

The Court's analysis of this issue is the crux of Mr. Parr's argument.  The Supreme Court's analysis did not simply jump to a conclusion that "nullification" is inadequate. Rather, the Court began by holding that the "nullification" technique was "confusing" because the instructions, taken as a whole, were susceptible to two different readings by the jury.  Penry II, 532 U.S. at 798-99.  The first possibility was that the jurors might understand the instruction as requiring them to "take Penry's mitigating evidence into account in determining their truthful answers to each special issue."  Penry II, 532 U.S. at 798.  If so, however, "the supplemental instruction placed the jury in no better position than was the jury in Penry I."  This was because "none of the special issues is broad enough to provide a vehicle for the jury to give mitigating effect to the evidence of Penry's mental retardation and childhood abuse.  Penry II, 532 U.S. at 798 (citing Penry I, 492 U.S. at 322-25).

The Court then went on to consider the possibility that the jury understood the supplemental instruction as a "nullification instruction."  Penry II, 532 U.S. at 798-99.  If so, the Court held, "it made the jury charge as a whole internally contradictory, and placed law-abiding jurors in an impossible situation."  Penry II, 532 U.S. at 799.  The Court specifically referred to the fact that jurors took an oath to render a "true verdict" under Article 35.22, Texas Code of Criminal Procedure, and "nullifying" for the

sake of mitigation would violate that oath.  <u>Penry II</u>, 532 U.S. at 799-800.  The Court

found that there was at least a "reasonable likelihood" that jurors who believed in their

oath would not follow the "nullification instruction."  <u>Penry II</u>, 532 U.S. at 800.  Even

when the explanatory role of attorneys' argument was taken into account, the majority

opinion held that "at best, the jury received mixed signals."  <u>Penry II</u>, 532 U.S. at 802.

In conclusion, the <u>Penry II</u> majority opinion noted two levels of possible confusion. It

never found that jurors actually violated their oaths. It did not find that the "nullification

instruction" in fact was read by jurors in a way that risked violation of the jurors' oaths,

given the first possibility considered by the Court.

  However, here in direct contravention to the requirements from the Court, the

questioned instruction tells the jury they must consider the crime, "including the

circumstances of the offense, the defendant's character and background" when

considering whether sufficient mitigating evidence "warrants that a sentence of life

imprisonment rather than a death sentence be imposed."  This is a far cry from giving

"meaningful consideration and effect to all mitigating evidence that might provide a basis

for refusing to impose the death penalty on a particular individual, ***notwithstanding the***

***severity of his crime or his potential to commit similar offenses in the future.***"

<u>Abdul-Kabir</u>, 127 S. Ct. at 1664 (emphasis added), <u>contra</u> <u>Scheanette v. Quarterman</u>, 82

F.3d 815, 824, 826-27 (5th Cir. 2007).

Courts generally presume that jurors follow their instructions.  See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). As in Penry II and Coble, a juror could not logically and ethically abide by the constitutional requirements as set forth by the Supreme Court and follow the instruction as set forth in Texas law.

### 2.   *Death is different.*

Because death is qualitatively different from any other punishment, the Eighth Amendment requires the highest degree of reliability in cases involving capital punishment.  See Woodson v. North Carolina, 428 U.S. at 305.  As such, the "State must ensure that the process is neutral and principled so as to guard against bias or caprice in the sentencing decision."  Tuilaepa v. California, 512 U.S. 967, 973 (1994).  To ensure this reliability, capital defendants must receive an opportunity for each juror to consider and give effect to circumstances mitigating against the imposition of the death sentence. Anderson v. State, 932 S.W.2d 502, 508-09 (Tex. Crim. App. 1996), cert. denied,   521 U.S. 1122 (1997) (citing Tuilaepa, 512 U.S. at 967 (1994)). When the certainty in the correctness or the reliability of the verdict comes into question it must be overturned.

Although Petitioner's evidence was relevant to the special issues, and the jury may therefore have been able to give partial effect to that evidence in answering the special issues, this Court must conclude that there is a reasonable likelihood that the jury was unable to give meaningful consideration and effect to a major mitigating thrust of Mr. Parr's evidence-its tendency to make him less morally culpable for his crimes-through the

special issues. The Texas Court of Criminal Appeals holding to the contrary was an unreasonable application of clearly established federal law as determined by the Supreme Court.  Accordingly, Mr. Parr is entitled to habeas relief on his <u>Penry</u> claim.  <u>Coble</u>, 496 F.3d at 448.

**RESPONSIVE TO RESPONDENT'S ROMAN NUMERAL III AND IV**

**PARR'S CLAIM THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IS PROCEDURALLY DEFAULTED. IN THE ALTERNATIVE, PARR RECEIVED CONSTITUTIONALLY EFFECTIVE ASSISTANCE OF COUNSEL**

**PARR'S CLAIM THAT THE TRIAL COURT COMPROMISED HIS RIGHT TO SELF-REPRESENTATION IS UNEXHAUSTED AND PROCEDURALLY DEFAULTED. IN THE ALTERNATIVE, THIS CLAIM IS WITHOUT MERIT.**

The State has argued that the issues are procedurally barred.  Resp't Answer at p. 13.  ("One of the conclusions reached by the state habeas corpus court was that this claim could have been raised on direct appeal.)  Here, the Respondent raises the alleged finding that "because the matter occurred at trial upon the record, it should have been raised and decided on direct appeal."  Relying upon <u>Busby v. Dretke</u>, 359 F.3d 708, 719 (5th Cir. 2004) and <u>Finley v. Johnson</u>, 243 F.3d 215, 219 (5th Cir. 2001), Respondent argues that review of this issue is barred.  Resp't Answer at 13-14.

> *A.    This Claim is not procedurally barred.*

A federal court cannot grant habeas relief unless the state court adjudication of that claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the

United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); <u>see</u> <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003).  Factual findings are presumed to be correct, and a petitioner has the burden of rebutting this presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court" if: (1) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  <u>Foster v. Johnson</u>, 293 F.3d 766, 776 (5th Cir. 2002).  Under the second clause, "a state court decision is 'an unreasonable application of clearly established' Supreme Court precedent if the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'"  <u>Johnson</u>, 293 F.3d at 776.

The Supreme Court has provided further guidance.  First, the Court indicated that the inquiry into unreasonableness is an objective one. Second, the Court emphasized that "unreasonable" does not mean merely "incorrect": an application of clearly established Supreme Court precedent must be incorrect and unreasonable to warrant federal habeas relief.  <u>Williams</u>, 529 U.S. at 409-12; <u>see also</u> <u>Morrow v. Dretke</u>, 367 F.3d 309, 313 (5th

Cir. 2004) ("[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable.").  Only if a state court's application of federal constitutional law fits within this paradigm may this court grant relief.  <u>Summers v. Dretke</u>, 431 F.3d 861, 869 (5th Cir. 2005).

To be "adequate" to support the judgment, the state law ground must be both "firmly established and regularly followed."  <u>Ford v. Georgia</u>, 498 U.S. 411, 424 (1991). If the state law ground is not firmly established and regularly followed, there is no bar to federal review and a federal habeas court may go to the merits of the claim.  <u>Barr v. Columbia</u>, 378 U.S. 146, 149 (1964).  An important consideration in determining whether an "adequate" state law ground exists is the application of the state law ground to identical or similar claims.  <u>Amos v. Scott</u>, 61 F.3d 333, 340-41 (5th Cir. 1995).

The "decision" of the Court of Criminal Appeals that the matter could have been raised ***and*** decided on direct appeal[4] is clearly inadequate based upon the Court of Criminal Appeals application of this issue in prior cases.  Although there is little doubt the state law was firmly established, it weighs against the state's contention that the issue was cognizable on direct review.  "Experience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply not in a shape, perhaps because of the very alleged ineffectiveness below, that would adequately reflect the failings of trial counsel."  <u>Ex parte Duffy</u>, 607 S.W.2d 507,

---

[4]        No. 74, 973, <u>Ex parte Parr</u>, Findings of Facts and Conclusions of Law at p. 5.

513 (Tex. Crim. App. 1980).  In fact, the Court of Criminal Appeals has repeatedly held

that a claim of ineffective assistance "must be 'firmly founded in the record' and 'the

record must affirmatively demonstrate' the meritorious nature of the claim."  Goodspeed

v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Thompson v. State, 9

S.W.3d 808, 813 (Tex. Crim. App. 1999)); accord Ex parte Ellis, 233 S.W.3d 324, 330

(Tex. Crim. App. 2007); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

"In the absence of anything in the record affirmatively demonstrating otherwise, we

presume that . . . counsel made a reasonable and strategic decision . . ."  Salinas, 163

S.W.3d at 740.  "It is not appropriate for an appellate court to simply infer ineffective

assistance based upon unclear portions of the record."  Mata v. State, 226 S.W.3d 425,

43221 (Tex. Crim. App. 2007).

     The Texas Court of Criminal Appeals is entitled to exercise whatever leniency or

grace it wishes in establishing its procedural rules.  Rosales v. Dretke, 444 F.3d 703, 710

(5th Cir. 2006).  This Honorable Court's task is to determine whether procedural rules

applied by the state court to bar merits review of a habeas claim have been strictly and

regularly applied.  Id.  If the state procedural rule has not been strictly and regularly

applied, this Court is to review the merits of the petitioner's constitutional claims.  Id.; cf.

Smith v. Robbins, 528 U.S. 259 (2000) (holding that habeas applicant must demonstrate

that "counsel was objectively unreasonable" in failing to file a merits brief addressing a

nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's

unreasonable failure . . . he would have prevailed on his appeal").  Here, Texas cases dating back to at least 1980 show an unbroken line demonstrating that ineffective claims will not be heard on a direct appeal.  As such, this Court should consider this claim.

### B.     The Respondent is not entitled to summary judgment on these grounds.

As an issue of fact is risen by the evidence, the Court should deny summary judgment.  The cases relied upon by Respondent either are legally or factually distinguishable.  First, Lowenfield v. Phelps, 817 F.2d 285, 290-91 (5th Cir. 1987) provides no ineffective claim can be had after consultation and *agreement* with the defendant about the trial strategy choices.  There, the sentencing hearing began, the defendant and his attorneys discussed whether they should adduce psychiatric testimony. Id. at 290.  The defendant "was strongly opposed to it *and ultimately persuaded counsel that for tactical reasons this decision was sound*."  Id. (emphasis added).  Counsel, testifying at the federal habeas hearing, concluded that the "[presentation of] psychiatric [evidence] would in effect possibly be more detrimental than helpful because what would have happened would be that we'd have the one psychiatrist concerning his possibility of being insane at the time of the crime and they have three or four psychiatrists saying he was sane at the time of the crime and at that point any jurors that may have been misgiven about his guilt would no longer have those misgivings. He [the defendant] expressed to me he didn't want to go forward with that. The more I thought about it, the more I examined it, how long the jury was out, I agreed with that."  Id.

The reviewing court, faced with the testimony as to the consultation and agreement of counsel found that the defendant's "mental condition was explored as fully as possible by counsel, given petitioner's lack of cooperation.  Counsel and the petitioner considered whether the psychiatrists' testimony would undermine the apparent doubt some of the jurors had of petitioner's guilt.  They consciously decided that preserving the doubt of guilt would serve them better.  Considering the deference we must give strategic trial decisions . . . the failure of counsel to call a psychiatrist was not deficient performance." Id. at 291.  Here, from what can be divined from the record, trial counsel and Mr. Parr conferred and *greatly disagreed* about the use of a peremptory strike.  Trial counsel called this decision "suicide" and were "one hundred percent" against the decision.  9 RR 89-90. As such, no meeting of the minds of trial strategy occurred as above.  As such, Lowenfield provides no support for Respondent's position.

Furthermore, the cited cases only give "great deference to choices which are made under the explicit direction of the client" and does not allow the abdication of the role of defense counsel.  However, as made clear by the Fifth Circuit, "it would be unusual to foreclose an effective assistance claim based on conduct that operates to the detriment of the client."  United States v. Masat, 896 F.2d 88, 92 (5th Cir. 1990) (citing Mulligan v. Kemp, 771 F.2d 1436, 1441 (11th Cir. 1985), cert. denied, 480 U.S. 911 (1987)).

At the conclusion , Respondent states that "because counsel were bound to follow the instructions of their client, the state court's decision was contrary to clearly-

established federal law, as set out by the Supreme Court of the United States. 28 U.S.C. §

2254(d).  Accordingly, this claim for relief should also be denied."  Resp't Answer at p.

18.  However, because this matter is decided contrary to Strickland and its progeny, this

Court should deny the summary judgment requested by the State.

> **1.      *Trial Counsel were ineffective for allowing Mr. Parr to make the decision.***

It was defense counsel's duty to reject Sanders even if Parr objected.  In Florida v.

Nixon, defense counsel decided, without the defendant's express consent but without his

objection, to concede guilt in this capital murder trial and focus on establishing a case for

sparing the defendant's life.  Florida v. Nixon, 543 U.S. 175, 178 (2004).  The Supreme

Court held counsel's decision to not be ineffective assistance of counsel.  Nixon, 543 U.S.

at 178.  The Court held that a defendant has a right to decide whether to plead guilty,

waive a jury, testify, and take an appeal.  Nixon, 543 U.S. at 178, 187.  Non-

responsiveness to trial counsel's decisions in these areas does not equate to the

defendant's opposition or contrary decision.  Nixon, 543 U.S. at 192.  All other decisions

are within the province of defense counsel.  Nixon, 543 U.S. at 187.  Defense counsel

does, however, have a duty to adequately disclose and discuss trial strategy and other

important decisions with the defendant, and failure to do so may be prejudicial ineffective

assistance.  Nixon, 543 U.S. at 178, 187.

The Sixth Amendment provides for "assistance" of counsel, not just

"appointment" of counsel. United States v. Chronic, 466 U.S. 648, 654-55 (1984).

"Assistance" includes "adequate legal assistance" by an attorney whose competence is within the range of that demanded in criminal cases.  Chronic, 466 U.S. at 655.  The Sixth Amendment is violated when "the process loses its character as a confrontation between adversaries."  Chronic, 466 U.S. at 656-57.  Conversely, if there is no effect on the reliability of the process, the Sixth Amendment is not violated.  Chronic, 466 U.S. at 658.  There is a presumption that the assistance passes constitutional muster, and the defendant has the burden to show otherwise.  Chronic, 466 U.S. at 658.  But the presumption is overcome by a countermanding presumption that there has been a violation of the Sixth Amendment when (1) there is a complete absence of counsel at a "critical stage" of the proceeding, or (2) defense counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.  Chronic, 466 U.S. at 659.  In addition, the countermanding presumption applies when circumstances outside counsel's control preclude adequate assistance of counsel, e.g., wholly inadequate trial-preparation time.  Chronic, 466 U.S. at 660-62.  In these latter instances, no inquiry into defense counsel's actual performance need be made, and prejudice need not be proven because it is presumed.  Chronic, 466 U.S. at 660-62.

Here, defense counsel abdicated their duty to assist Parr by relying on defense counsel's experience in determining that Sanders would make a bad juror.  Thus defense counsel abandoned their roles at a critical stage in the trial, i.e., jury selection.  Chronic, 466 U.S. at 659.  Furthermore, prejudice is presumed.  Chronic, 466 U.S. at 660-62.

### 2.    *The judge erred by failing to properly admonish Mr. Parr.*

In the alternative, it was the trial judge's duty to make sure Parr's decision was freely and intelligently made.  A defendant has the right of self-representation and can reject his Sixth Amendment right to counsel, and thereby he can make these other decisions too.  Faretta v. California, 422 U.S. 806, 814-17 (1975).  This is an aspect of Fifth Amendment due process and Sixth Amendment right to counsel.  Faretta, 422 U.S. at 817-19.  Failure to elect to represent himself and acceptance of the assistance counsel shows implied consent to counsel making all decisions other than whether to plead guilty, waive a jury, testify, and take an appeal.  Faretta, 422 U.S. at 820-21.  If the defendant chooses self-representation, the record should be clear that the defendant's decision is made voluntarily and intelligently.  Faretta, 422 U.S. at 835-36.  Pertinent areas of inquiry may include whether (1) the defendant clearly and unequivocally declared to the trial judge that he wants to represent himself, (2) the defendant does not want counsel, (3) the defendant is voluntarily exercising his informed free will, (4) the defendant is mentally competent and understanding of the impact of his decision, and (5) the trial judge has warned the defendant that (a) the judge believes the defendant is making a mistake and (b) the defendant will be required to follow the rules of trial procedure.  Faretta, 422 U.S. at 835-36.  If the record does not establish that the decision was freely and intelligently made, there was error and harm need not be shown.  United States v. Virgil, 444 F.3d

447, 455-56 (5th Cir. 2006) (applying <u>Faretta</u> and holding that no showing of harm required).

By making the decision, Parr in effect took over his defense at that moment. Thus the judge should have made the inquiries required under <u>Faretta</u>. There is nothing in the record to show that this occurred. This was especially important as the record shows that Parr's intellectual functioning was in question: he had a low IQ and psychological disorders. 21 RR 74-106. His defense counsel had filed a pre-trial motion to have Parr examined for mental incompetency and insanity. 1 CR 76-78. Thus there was error. Prejudice need not be shown. <u>Virgil</u>, 444 F.3d at 455-56. Mr. Parr is entitled to relief.

## RESPONSIVE TO RESPONDENT'S ROMAN NUMBER VI

## THE CONSTITUTION DOES NOT REQUIRE EXTRANEOUS OFFENSES OFFERED AT THE PUNISHMENT PHASE OF A CAPITAL TRIAL BE PROVEN BEYOND A REASONABLE DOUBT.

On original submission, Mr. Parr argued that he was insufficiently tied to several extraneous offenses set forth by the State in the punishment phase. Pet'r Writ of Habeas Corpus at p. 32-40. However, the State argued that "[b]ecause Parr has failed to show that the state court's rejection of this claim is an objectively unreasonable application of relevant precedent, this Court should deny relief. 28 U.S.C. § 2254 (d). Resp't Answer at p. 30. The State fails to directly confront the specific issue before this court, and instead relies upon a string of cases stating that admission of the extraneous offenses are admissible in the punishment phase. Resp't Answer at 29-30.

As in his initial brief, Mr. Parr concedes the admissibility.  However, "the mere fact that evidence of the defendant's alleged unadjudicated criminal activity is sufficiently reliable to be admitted in evidence at a capital sentencing hearing does not mean that the jury's sentence based on that evidence necessarily is constitutionally reliable."  Devier v. Zant, 3 F.3d 1445, 1466 (11th Cir. 1993) (Kravitch, J. concurring specially).  The admission of evidence of an extraneous offense in the second phase of a Texas bifurcated proceeding must be watched closely and may implicate constitutional concerns.  Milton v. Procunier, 744 F.2d 1091, 1097 n.5 (5th Cir. 1984), cert. denied, 471 U.S. 1030 (1985).

Here, the State put on highly prejudicial and inflammatory evidence of Mr. Parr's "participation" in a drive by shooting and another murder.  The basic requirements of reliability and fundamental fairness extend to the entire sentencing process.  See, e.g., Woodson v. North Carolina, 428 U.S. 280, 305 (1976) ("Because of [the qualitative difference between the death penalty and a sentence of imprisonment], there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."). The crucial Eighth Amendment question is whether the ultimate sentencing decision is reliable, not whether the admission of certain evidence is reliable.  Devier, 3 F.3d at 1467 (Kravitch, J. concurring specially).  Here, the highly questionable nature of the "ties" to Mr. Parr in these crimes was the focal point of his initial issue.  "The very purpose for introducing evidence of a defendant's prior criminal record is to encourage the jury to assess a greater [punishment]. Under such

circumstances, improper evidence of a prior charge or conviction before the jury is inherently prejudicial." Morgan v. State, 515 S.W.2d 278, 282 (Tex. Crim. App. 1982). In habeas actions, this court does not sit to review the mere admissibility of evidence under state law. See Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991). However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. See Evans v. Thigpen, 809 F.2d 239, 242 (5th Cir. 1987). Thus, only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted. See Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986). Further support for this issue can be found as the State argues, at least in part, that this bogus evidence in part supports the future dangerousness issue. See Resp't Answer at p. 32. Here, the utter lack of any ties to the alleged drive-by shooting, and less than credible evidence of the other alleged murder must lead to the finding that the judgment in this case must be reversed.

## RESPONSIVE TO RESPONDENT'S ROMAN NUMBER VII AND VIII

## THE EVIDENCE WAS SUFFICIENT TO SHOW THAT PARR CONSTITUTES A FUTURE DANGER

## THE TRIAL COURT WAS NOT REQUIRED TO DEFINE ALL TERMS IN ITS INSTRUCTIONS

In two separate issues, the State argues that the evidence supporting future dangerousness was legally sufficient, and that the "future dangerousness" issue is not an

aggravating circumstance, and that the State has free rein in circumscribing the issues here as they please.[5]  Mr. Parr respectfully disagrees.

### A.      Clarity in these terms is constitutionally required.

The Supreme Court has emphasized, the dispositive question when examining whether a factor increases punishment "is not one of form, but of effect": "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt."  Ring v. Arizona, 536 U.S. 584, 602 (2002).  "A defendant may not be exposed to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone."  Ring, 536 U.S. at 602.  Because Ring would not have been subject to the death penalty but for the trial judge's factual determination as to the existence of an aggravating factor, the Supreme Court declared Ring's death sentence violated the right to trial by jury protected by the Sixth Amendment.  Ring, 536 U.S. at 609.  Petitioner's jury's factual finding on the future dangerousness special issue was an essential part of the procedural process under Texas law for determining whether the petitioner was eligible to receive the death penalty.  Moore v. Quarterman, 526 F. Supp. 2d 654, 732-33 (W.D. Tex. 2007), aff'd, 2008 WL 2640094 (5th Cir. July 7, 2008) (slip op.).  It is unquestionably, no matter where it is in the process, whether narrowing or

---

[5]          "Since the complained of terms are used in the selection decision rather than the eligibility decision, these terms are not subject to the same definitional requirements as terms that are used in the eligibility decision."  Resp't Answer at p. 34.

selection process, it increases punishment.  As such, it is properly defined as an aggravating element.  Blue v. State, 125 S.W.3d 491, 501 (Tex. Crim. App. 2003) ("In other words, a jury's finding on mitigation occurs only after the State has proven the elements of capital murder, at the guilt stage, and the aggravating circumstances-evidence of the defendant's future dangerousness-beyond a reasonable doubt.").

Furthermore, whether an aggravator is used for narrowing, or for weighing, or for both, it cannot be impermissibly vague.  See Arave v. Creech, 507 U.S. 463 (1993) (utilizing the vagueness analysis to an aggravating factor, even though the remaining aggravating factor made defendant death eligible); Sochor v. Florida, 504 U.S. 527 (1992) (same); Walton v. Arizona, 497 U.S. 639 (1990) (same).  The Court in Tuilaepa relied upon by the Respondent[6], recognized as much by subjecting the challenged factors to a vagueness analysis.  Tuilaepa, 512 U.S. at 984 (Blackmun, J. dissenting).

### B.    *"The more relevant distinction is not how an aggravating factor is presented, but what the sentencer is told to do with it."*[7]

With the proper constitutional focus placed upon the objected to words, the error under the Eighth Amendment becomes clear.  Each of the challenged factors "leave[s] the sentencer without sufficient guidance for determining the presence or absence of the factor."  Tuilaepa, 512 U.S. at 984 (Blackmun, J. dissenting).  As argued previously, the term "probability" provides "no inherent restraint on the arbitrary and capricious

---

[6]    Resp't Answer at p. 33.

[7]    Tuilaepa, 512 U.S. at 986 (Blackmun, J. dissenting).

infliction of the death penalty."  Godfrey v. Georgia, 446 U.S. 420, 428 (1980).

Furthermore, as argued previously, Godfrey is applicable and negates the open-ended

terms of "criminal act of violence" and "society."  If a sentencer could conclude that an

aggravating circumstance applies to every defendant eligible for the death penalty, the

circumstance is constitutionally infirm.  See Maynard v. Cartwright, 486 U.S. 356, 364

(1988) (invalidating an aggravating circumstance that "an ordinary person could honestly

believe" described every murder).

In short, these open-ended factors and a lack of guidance to regularize the jurors'

application of these factors create a system in which, as a practical matter, improper

arguments can be made in the courtroom and credited in the jury room.  Tuilaepa, 512

U.S. at 991 (Blackmun, J. dissenting).  "I am at a loss to see how these challenged factors

furnish the clear and objective standards that provide specific and detailed guidance, and

that make rationally reviewable the process for imposing a sentence of death."  Tuilaepa,

512 U.S. at 991 (Blackmun, J. dissenting) (internal quotations omitted).  Given the

"extraordinary measures" that the Court has undertaken to guarantee "as much as is

humanly possible" that a death sentence has not been imposed by "mistake,"[8] a remand

for resentencing is the least that is required.

---

[8]    Eddings v. Oklahoma, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring).

## RESPONSIVE TO RESPONDENT'S ROMAN NUMBER IX

## PARR'S CLAIM THAT THE 12/10 RULE IS UNCONSTITUTIONAL IS MERITLESS.

Following the punishment phase of Mr. Parr's trial, the trial court instructed the jury in accordance with TEX. CODE CRIM. PROC. ANN. art. 37.071 §§ 2(d)(2), (f)(2) ((Vernon 1981 & Supp.2005), which forbids the trial court, as well as the parties, counsel or any other person from informing the jury that their failure to reach a verdict results in a life sentence.  The jurors in Mr. Parr's case were required to answer two special issues pertaining to future dangerousness and to mitigation.  The jurors were instructed that they could not answer the future dangerousness issue "yes" or the mitigation issue "no" unless all twelve jurors were unanimous in that decision.  They also were instructed that they could not answer the future dangerousness special issue "no" or the mitigation special issue "yes," unless at least ten jurors agreed with that answer, which would then result in a life sentence.  This is commonly known as the "12-10" rule.

As previously argued, confuses jurors by failing to inform them that their answers to the verdict form can result in a life sentence in one of two ways--either by answering the special issues in a manner that results in a life sentence or by failing to reach a verdict at all.  Pet'r Writ of Habeas Corpus at p. 54-57.  This matter arose a factually similar circumstance from Illinois.  United States ex rel. Kubat v. Thieret, 679 F. Supp. 788 (N.D. Ill. 1988), aff'd, 867 F.2d 351 (7th Cir.), cert. denied, 493 U.S. 874 (1989).  There,

the defendant asserted that his death sentence cannot stand because the judge erroneously

instructed the jury that a unanimous verdict was required to preclude the death penalty.

> The State argues that the absence of mitigating evidence did not foreclose the
> jury's option to vote against the death penalty. Assuming that this is correct,
> and given the awesome responsibility of deciding whether Kubat should live
> or die, it is not implausible that one of the twelve jurors entered the jury room
> with some doubts about sentencing Kubat to death, only to find that the other
> eleven jurors were determined to impose the death penalty. It is also possible
> that this sole dissenting juror was not at all "confused" by the conflicting jury
> instructions; he simply heard and relied on the erroneous instruction.
> Consequently, this juror mistakenly believed that he would have to persuade
> the rest of the jurors to change their minds in order to preclude the death
> penalty. Laboring under this misconception, and faced with eleven jurors who
> were convinced that Kubat deserved a death sentence, the dissenting juror
> would have quickly come to the conclusion that his objections were futile.
> Due to his misunderstanding of the law, this juror would have resigned himself
> to acquiescence in Kubat's death sentence, unaware that his solitary dissenting
> vote would have prevented imposition of the death penalty. This chilling
> scenario raises a reasonable doubt that the erroneous jury instruction could
> have cost Kubat his life.

Kubat, 679 F. Supp. at 815.

Here, the instructions work the same evil. Under Texas state law, if the jury fails

to reach a decision regarding either special issue in a capital murder case, the defendant

will receive a life sentence. By law, none of the parties are permitted to inform the jury

of this result should the jury fail to reach a verdict. TEX. CODE CRIM. PROC. ANN. art.

37.071, § 2(a)(1)(g) (Vernon 1993).

As such, Mr. Parr argues the reliance upon existing case law is in error.

Furthermore, the state court's decision on this claim "was contrary to [and] involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  As such, it is properly

considered here.  This Court should grant Mr. Parr's requested relief.

## PRAYER

For the reasons set forth above, Petitioner requests that a Writ of Habeas Corpus

issue, and that he be granted release, a new trial, a new punishment trial, or whatever

other relief he may be entitled.

Respectfully submitted,

**LAW OFFICE OF STAN SCHWIEGER**


/S/_____
Stan Schwieger
600 Austin Avenue, Suite 12
P.O. Box 975
Waco, TX   76703
254-752-5678
254-752-7792–Facsimile
State Bar No. 17880500
**ATTORNEY FOR PETITIONER**

## CERTIFICATE OF SERVICE

The following has been transmitted to the  Office of the Texas Attorney General,

P.O. Box 12548, Austin, TX 78711-2548 by CM/ECF.


/S/ _____
Stan Schwieger