**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**WACO DIVISION**

| | | |
|---|---|---|
| **CARROLL JOE PARR,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. W-06-CA-317** |
| | § | |
| **RICK THALER, Director, Texas** | § | |
| **Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION
AND ORDER**

Petitioner was convicted of capital murder in the shooting death of a drug dealer during the course of a robbery and was sentenced to death.  He asserts that his capital murder conviction and sentence are unconstitutional and should be vacated under the provisions of Title 28, United States Code, Section 2254 ("§ 2254").  Respondent, having been ordered to respond to Petitioner's application, has filed an answer and brief requesting that Petitioner's application be denied.  Having reviewed Petitioner's application, Respondent's answer and brief, Petitioner's response and the record in this case, the Court has determined Petitioner's application for habeas relief should be denied.

**I. Background**

The facts as established from the trial reflect that Petitioner Carroll Joe Parr ("Parr" or "Petitioner") made a deal to purchase marijuana from Joel Dominguez

("Dominguez") outside the B&G Convenience store in Waco, Texas.  After the purchase, Parr returned to the store with his friend Earl Whiteside ("Whiteside") in order to retrieve his money.  Dominguez was outside the store with his friend, Mario Chavez ("Chavez").   Parr and Whiteside, both armed, forced Dominguez and Chavez to walk to a fenced area beside the store.  Parr pistol-whipped Dominguez, demanding his money back.  Dominguez gave Parr all the money he was carrying, and Parr told Whiteside, "[s]moke 'em."  Whiteside shot Chavez in the hand, while Parr shot Dominguez in the head.  Dominguez died from his injuries.

At trial, Parr testified that he had planned the drug deal, but he was not involved in the robbery.  He claimed that his friend, Damion Montgomery ("Montgomery"), was the shooter.  Both Chavez and Whiteside, however, identified Parr as the person who shot Dominguez.  Additionally, Parr's girlfriend, two friends, including Montgomery, and a cellmate, all testified that Parr had confessed that he was the shooter.

During the punishment phase, the Court of Criminal Appeals noted:

> At punishment, the State presented evidence showing an escalating pattern of disrespect for the law. [Parr] was convicted of three counts of delivery of cocaine on November 26, 1996, and was placed on probation.  On January 8, 1998, [Parr] violated the terms of his probation and was sentenced to two years in state jail.  After his release, he was convicted of evading arrest on December 29, 2000, and of possession of marijuana on December 13, 2001.  There was evidence that [Parr] had committed a number of violent unadjudicated offenses, including a shooting at a residence in 2002 and an assault in

2

2003.  Also, there was significant evidence regarding his involvement in the unadjudicated murder of Ronnie Zarazua on December 9, 2001.

The State introduced evidence indicating that [Parr] was without regret or remorse for the alleged killing of Zarazua or the murder of Dominguez, and that he expressed a willingness to engage in future violent acts.  Whiteside testified that immediately after killing Zarazua, [Parr] returned to the site where he had dumped the body to show it to him.  Whiteside claimed that [Parr] told him that he had killed Zarazua because he was supposed to testify against [Parr]'s friend Milton Crosby.  He also said that [Parr] did not express any remorse for the killing, stating that he was "keeping it real" for Crosby.  Harrison [Parr's girlfriend] also testified that [Parr] drove her to the area where he had shot Zarazua and told her that he did it because Zarazua was going to testify against one of his friends.  Similarly, witnesses claimed that after shooting Dominguez, [Parr] did not express remorse and was angry with Whiteside for not killing Chavez because he did not want to leave a witness behind.

*Parr v. State*, No. 74,973, at 4-5 (Tex. Crim. App. June 7, 2006) (unpublished) (citations omitted).

## II.  PROCEDURAL HISTORY

Petitioner's conviction and sentence were affirmed on direct appeal.  *Parr v. State*, No. 74,973 (Tex. Crim. App. June 7, 2006) (unpublished).  His petition for a writ of *certiorari* was denied.  *Parr v. Texas*, 549 U.S. 1120, 127 S.Ct. 937 (2007).  While his direct appeal was proceeding, Parr filed his state application for writ of habeas corpus.  His habeas application was denied on October 11, 2006.  *Ex Parte Parr*, Application No. 65,443-01 (Tex. Crim. App. Oct. 11, 2006) (*per curiam*) (unpublished).  He then filed his present federal habeas petition.

3

## III.  GROUNDS OF ERROR

Petitioner asserts the following claims for relief:

1)    The statute under which Petitioner was sentenced to death is unconstitutional, violating the Eighth Amendment as interpreted in *Penry v. Johnson,* because the mitigation special issue sends mixed signals to the jury, rendering any verdict reached in response to that special issue unreliable.

2)    Petitioner's Sixth Amendment right to assistance of counsel was violated when defense counsel abandoned their roles and allowed Parr to decide whether to accept a juror that defense counsel determined was unsatisfactory.

3)    Petitioner's Sixth Amendment right to self-representation was violated when the trial judge failed to admonish him regarding his decision to accept a juror that defense counsel had determined to be unsatisfactory.

4)    Petitioner's case should be remanded for a new trial because a "vacillating" juror was wrongfully excluded.

5)    Petitioner's right to due process and his right to be free from cruel and unusual punishment was violated by the State's use of extraneous offenses at punishment that were not established beyond a reasonable doubt.

6)    The Texas Court of Criminal Appeals' decision that the evidence was sufficient to support the jury's finding of "future dangerousness" was contrary to, and involved an unreasonable application of, clearly established federal constitutional law.

4

7)    Petitioner's rights to due process and protection against cruel and unusual punishment were violated by the trial court's failure to define the term "probability" in the jury instructions.

8)    Petitioner's rights to due process and protection against cruel and unusual punishment were violated by the trial court's failure to define the term "criminal acts of violence" in the jury instructions.

9)    Petitioner's rights to due process and protection against cruel and unusual punishment were violated by the trial court's failure to define the term "society" in the jury instructions.

10)    The "12/10 rule" found in Article 37.01 is unconstitutional because it violates Petitioner's rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

11)    Texas' method of execution violates the Eighth Amendment.

## IV. DISCUSSION

A.  Standard for Habeas Review.  Title 28, United States Code, Section 2254 ("§ 2254") provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal courts must defer to a state court's adjudication of a claim if the claim has been adjudicated on the merits in the state court proceeding unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

A decision is "contrary to federal law" if it is contradicts a decision of the Supreme Court on a question of law or if it "resolves a case differently from the way the Supreme Court has on a set of materially indistinguishable facts." *Reed v. Quarterman*, 504 F.3d 465, 471 (5th Cir. 2007), *quoting Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). *See also Woodfox v. Cain*, 609 F.3d at 789. A state court "unreasonably" applies federal law when it identifies the correct governing principle established by the Supreme Court, but unreasonably applies it to the facts of the case. *Williams v. Taylor*, 529 U.S. at 407; *Woodfox v. Cain*, 609 F.3d at 789. *See also Woodward v. Epps*, 580 F.3d 318, 325 (5th Cir. 2009); *Rogers v. Quarterman*, 555 F.3d 483, 488-89 (5th Cir. 2009). An unreasonable application of federal law is distinguished from a state court decision that is merely incorrect or erroneous.

*Woodfox v. Cain*, 609 F.3d at 789.  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."  *Schirro v. Landrigan*, 550 U.S. 465, 473 (2007).

"Clearly established" under § 2254(d)(1) is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  "Clearly established" is limited to determinations by the Supreme Court and refers to actual holdings of the Supreme Court as opposed to dicta.  *Williams v. Taylor*, 529 U.S. at 381.  When evaluating an unreasonable determination of the facts, the state court's findings of fact are entitled to a presumption of correctness which the petitioner may overcome only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005), *cert. denied*, 547 U.S. 1073 (2006).

In addition to the foregoing, the amendments to § 2254 contained in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") did not overrule prior precedent which forecloses habeas relief in the following instances: (1) claims which are procedurally barred as a consequence of a failure to comply with state procedural rules;[1] (2) claims for which the petitioner seeks retroactive application of a new rule of law on a conviction that was final before the rule was announced;[2] or

---

[1]*Coleman v. Thompson*, 501 U.S. 722 (1991).

[2]*Teague v. Lane*, 489 U.S. 288 (1989).

7

(3) claims for which the petitioner asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict."[3]

B. Exhaustion of State Remedies. Under 28 U.S.C. § 2254(b)(1)(A), a federal court may not grant habeas relief unless the petitioner has exhausted his available state court remedies, which means having the issues addressed by the highest court in the state. *Woodfox v. Cain*, 609 F.3d at 789-90. Once failure to exhaust has been raised, the court must compare the petitioner's state and federal claims to determine whether the substance of those claims were presented to the state court, which is a "case- and fact-specific inquiry." *Id.*, *quoting Moore v. Quarterman*, 533 F.3d 338, 341 (5th Cir. 2008) (*en banc*).

> "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (internal citations omitted). "Rather, the petitioner must afford the state court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (*quoting Anderson*, 459 U.S. at 6, 103 S.Ct. 276).

*Woodfox v. Cain*, 609 F.3d at 792 (footnote omitted). "A petitioner fulfills the exhaustion requirement if 'all crucial factual allegations were before the state courts at the time they ruled on the merits" of the habeas petition.'" *Smith v. Quarterman*,

---

[3]*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

8

515 F.3d 392, 400 (5th Cir. 2008), *quoting  Dowthitt v. Johnson*, 230 F.3d 733, 746 (5th Cir. 2000).  In the present case, Petitioner's third and eleventh claims were neither raised on appeal nor in his state habeas application.  They are, therefore, barred from review in this federal proceeding.[4]

C.  Acceptance of Juror at Defendant's Direction.  Petitioner's second ground of error revolves around his decision to accept Billy Foy Sanders as a juror despite counsel's advice to strike him.  Petitioner argues that this circumstance violated his Sixth Amendment rights to effective assistance of counsel.[5]  Respondent asserts that this claim is barred because it was denied by the state court on state procedural grounds.  Akin to the exhaustion requirement, is the provision that federal review is precluded when the state court decision rests upon an independent and adequate state ground.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991);  *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006).  The rule is "grounded in concerns of comity and federalism" and "is designed to prevent federal courts from deciding cases on federal constitutional grounds regarding a petitioner's confinement that would be advisory because the confinement can be upheld on an independent and adequate state law basis." *Rosales v. Dretke*, 444 F.3d at 707.  To be adequate, the state law ground

---

[4]      Even if not barred for failure to exhaust, Petitioner's claims would be without merit.  Petitioner made no explicit request to represent himself during trial, and the method of execution used by the State of Texas has been found to pass Constitutional muster.  *See Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520 (2008) (plurality opinion).

[5]      As previously noted, Petitioner's argument under the Sixth Amendment regarding his right to self representation was not exhausted in the state courts.

9

"must be both 'firmly established and regularly followed.'" *Id.*, *quoting Ford v. Georgia*, 498 411, 424 (1991).

> If the state law ground is not firmly established and regularly followed, there is no bar to federal review and a federal habeas court may go to the merits of the claim. *Barr v. Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964). An important consideration in determining whether an "adequate" state law ground exists is the application of the state law ground to identical or similar claims. *Amos v. Scott*, 61 F.3d 333, 340-41 (5th Cir. 1995).

*Rosales v. Dretke*, p. 707. *See also Amos v. Scott*, 61 F.3d 333, 339 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995) ("In general, the test for adequacy of such a rule is that it is strictly or regularly followed by the cognizant state court").

Although Petitioner raised this claim in his state habeas application, one of the grounds asserted by the state court in rejecting the claim was that Petitioner had failed to raise it on direct appeal in violation of state law. As previously noted, the federal court does not reach the merits of a claim when a state court has denied relief on an adequate state law basis, independent of the merits of the federal claim. *Balentine V. Thaler*, 626 F.3d 842, 849 (5th Cir. 2010). "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). A claim should be construed as one involving federal law when "the state court decision  rests 'primarily on federal law' or the state and federal law are 'interwoven,' and if 'the adequacy and independence of any possible

state law ground is not clear from the face of the opinion. . . .'" *Id., quoting Ruiz v. Quarterman*, 504 F.3d 523, 527 (5th Cir. 2007).

Under Texas law, a claim of ineffective assistance of counsel is not generally raised on direct appeal, but in a state habeas application. *See Mata v. State*, 226 S.W.3d 425 (Tex. Crim. App. 2007); *Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). This is because the record is usually not sufficiently developed on appeal to adequately address such a claim. There is, however, no requirement that an ineffective assistance claim be presented initially on appeal. As such, a state court determination that an ineffective assistance of counsel claim is waived if not raised on direct appeal is neither "firmly established" nor "regularly followed" in Texas. Petitioner's ineffective assistance claim in this regard is not procedurally barred.

The Sixth Amendment to the Constitution provides that the accused in a criminal prosecution has the right to assistance of counsel for his defense. In evaluating whether counsel's performance is inadequate, the Supreme Court has developed a two-prong test. *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, the Petitioner must establish: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense so as to deprive him of a fair trial. *Id*. The proper standard for evaluating counsel's performance is that of reasonably effective assistance, considering all of the circumstances existing as of the time of counsel's conduct. *Hill v. Lockhart*, 474 U.S. 52 (1985). Scrutiny of

counsel's performance is "extremely deferential;" *Bell v. Lynaugh*, 828 F.2d 1085, 1088 (5th Cir. 1987); and counsel's conduct is "strongly presumed to fall within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Counsel's advice need not be perfect -- it need only be reasonably competent within the "range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To establish prejudice, the defendant must show that his attorney's errors were so serious that they rendered "the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 362, 372 (1993). In the present case, Petitioner has shown neither ineffective assistance nor prejudice.

Generally, decisions related to jury selection fall within the category of trial tactics. *Sharp v. Johnson*, 107 F.3d 282, 287 (5th Cir. 1997). Additionally, it is not ineffective assistance to accede to a client's wishes even though doing so may not be beneficial to the client. "Counsel will rarely be ineffective for merely failing to successfully persuade an insistent defendant to abandon an unlikely defense." *Moore v. Johnson*, 194 F.3d 586, 606 (5th Cir. 1999). While counsel is held to a standard of reasonable effectiveness, he "is still only an assistant to the defendant and not the master of the defense." *Mulligan v. Kemp*, 771 F.2d 1436, 1441 (11th Cir. 1985). "Because we recognize that a defendant must have this broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the

explicit direction of the client." *Id.  See United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990), *quoting Lowenfield v. Phelps*, 817 F.2d 285, 292 (5th Cir. 1987), *cert. granted on other grounds,* 483 U.S. 1005 (1987), and *aff'd*, 484 U.S. 231 (1988) ("The circumstances are extremely rare when counsel is not required to follow his client's instructions on a decision of this nature").  *See also Autry v. McKaskle*, 727 F.2d 358 (5th Cir.), *cert. denied*, 465 U.S. 1090 (1984) (no ineffective assistance when counsel acceded to client's wish to not present mitigating evidence at the sentencing phase of his death penalty trial).

In the *Faretta* case, the Supreme Court recognized, although within the context of examining a defendant's right to self-representation, "that an accused's right to defend himself against the government is a personal right.  This personal right is predicated on respect for the individual's liberty to make his own choices as to his defense for it is the individual himself who must bear the consequences of those choices." *Haynes v. Cain*, 298 F.3d 375, 386 (5th Cir. 2002), *citing Faretta v. California*, 422 U.S. 860, 834 (1975).  "Because the right to defend onself is personal, trial counsel is only an 'assistant' to the defendant and not the master of the defense.  Consequently, the right to 'assistance of counsel' necessarily entails that the defendant will be able to make certain fundamental decisions regarding his counsel's representation." *Haynes v. Cain*, 298 F.3d at 386.

Even if some sort of attorney ineffectiveness were present, Petitioner makes no showing or prejudice.  There is nothing to indicate that the juror was biased,

incompetent, or ineligible, nor is there anything to suggest that the jury's decision in this case was swayed by this one particular juror.

Finally, the state habeas court's factual determination that the decision to keep juror Sanders was based upon Petitioner's voluntary choice also bars further review.

D.  Dismissal of Vacillating Juror.  In his third claim, Petitioner asserts that the trial court improperly dismissed prospective juror Roderick Dylan Garnett after he gave inconsistent answers regarding his ability to truthfully answer the special issues and recommend the death penalty.  Generally, a juror may not be "challenged for cause based on his views about capital punishment *unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath*."  *Wainwright v. Witt*, 469 U.S. 412, 420 (1985), *quoting Adams v. Texas*, 448 U.S. 38, 45 (1980) (emphasis added).  Jurors may be excluded for cause if they make it "unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*."  *Witherspoon v. Illinois*, 391 U.S. 510, 522 n.21 (1968) (emphasis in original).  The burden is on the party attempting to exclude a juror because of bias to demonstrate that the potential juror lacks impartiality.  *Wainwright v. Witt*, 469 U.S. at 426.  It then becomes the trial judge's duty to determine whether the challenge is proper.  *Id*.  "[D]eference must be paid to the trial

14

judge who sees and hears the juror." *Id*.  The question for the reviewing court is a factual one – not a legal issue nor a mixed issue of law and fact.  *Id*. at 430.  In order to prevail, the Petitioner would have to show that the state court's factual determination was erroneous by clear and convincing evidence.  *Id*., 435.  "[W]here the record does not indicate the standard applied by a state trial judge, he is presumed to have applied the correct one."  *Id*., p. 432.

The exchange with Juror Garrett contained in the Court of Criminal Appeals' opinion clearly supports the trial judge's determination that juror should be excused. The record reflects that the juror's attitude toward the death penalty would prevent him from making an impartial decision.  Petitioner has not established by clear and convincing evidence that the trial court's factual determination was erroneous.  The state court's decision was not in conflict with clearly established federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence.  Petitioner's third ground is without merit.

E. Extraneous Offense.  Petitioner argues that extraneous offenses presented at the penalty phase were not proven beyond a reasonable doubt.  There is no federal constitutional prohibition against the introduction of extraneous, unadjudicated criminal conduct at a trial's punishment phase. *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005), *cert. denied*, 546 U.S. 1217, 126 S.Ct. 1434, 164 L.Ed.2d 137 (2006).  *See also Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir. 1987)

("admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments").  The federal constitution also does not require "that unadjudicated extraneous offenses be proved beyond a reasonable doubt for evidence of those offenses to be admitted at trial."  *Brown v. Dretke*, 419 F.3d at 376-77.  Petitioner's fifth claim is without merit.

F.  Future Dangerousness.  In his sixth claim for relief, Petitioner argues that the Texas Court of Criminal Appeals' decision that the evidence supported an affirmative answer to the future dangerousness special issue was contrary to and involved an unreasonable application of clearly established federal constitutional law. Petitioner appears to be arguing both that the evidence was insufficient to support the jury's finding regarding future dangerousness and also that the special issue given to the jury is insufficient to narrow the class of defendants eligible for the death penalty.  The second issue will be addressed along with Petitioner's other arguments regarding the Texas capital sentencing special issues.

As to the sufficiency of the evidence, a conviction passes constitutional muster if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The Court of Criminal Appeals cited *Jackson* in its opinion and framed its analysis under that constitutional standard.  Parr, No. 74,973 at 2-3.  The Court of Criminal Appeals recognized "that the circumstances of the offense alone may be sufficient to support

a jury's finding of future dangerousness," and that evidence of "an escalating pattern of disrespect for the law" can be used to support a finding of future dangerousness. *Id*. at 2, *citing Martinez v. State*, 924 S.W.2d 693 (Tex. Crim. App. 1996) and *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The Court further noted that future dangerousness could be supported by "evidence showing a lack of remorse and/or indicating an expressed willingness to engage in future acts." *Id*. at 3, *citing Rachal v. State*, 917 S.W.2d 799, 860 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1043 (1996). The Court finally noted that the jury is able to consider both free society and prison society in determining future dangerousness. *Id*., *citing Morris v. State*, 940 S.W.2d 610, 613 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1278 (1997).

The Court recounted the circumstances of the offense, including Petitioner's planning of the offense; the fact that the victim was unarmed; the confession of his guilt to numerous people; Petitioner's numerous felony convictions and involvement in several violent unadjudicated offenses including a drive-by shooting and another murder, the victim of which was a witness who was supposed to testify against a friend of the Petitioner; his lack of regret or remorse for this or the other murder, exhibited by his taking at least two people to view the victim's body in the other murder and his anger at his co-defendant in this murder for not killing Chavez so as to eliminate all witnesses; and his expressed willingness to engage in future violent acts. The foregoing is clearly sufficient to establish Petitioner's future

dangerousness, whether in prison or out, particularly in regard to his willingness to eliminate witnesses to his or a friend's offenses.  In this regard, the Court of Criminal Appeals' decision was neither contrary to Supreme Court clearly established precedent nor did it arrive at a result different from Supreme Court precedent on a set of materially indistinguishable facts.  This claim is, therefore, without merit.

F.  Special Issues.  Petitioner argues in his First, Sixth, Eighth and Ninth claims that the Texas Special Issues given to the jury at the punishment phase are constitutionally infirm.  Specifically, Petitioner argues that the mitigation special issue sends "mixed signals" to the jury; the future dangerousness special issue is not narrowly tailored; and the special issues fail to define the terms "probability," "criminal acts of violence," and "society."

Under the Texas scheme, once a defendant is found guilty of capital murder, the jury must then answer two special issues unanimously in order for a sentence of death to be imposed.  *See* TEX.CODE CRIM. PROC. ANN. art. 37.071 § 2.  The first special issue assesses the defendant's "future dangerousness," which the State must prove beyond a reasonable doubt.  *Id*. § 2(c).  The jury is asked "[w]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."  *Id*. § 2(b)(1).  If the jury answers in the affirmative, they must next address issues of mitigation.  At the time of Petitioner's conviction, the mitigation special issue inquired "whether, taking into consideration all of the evidence, including the circumstances of the offense, the

18

defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed."[6] If the jury answers the mitigation question "no," the punishment is death.

In *Jurek v. Texas*, 428 U.S. 262, 268-75 (1976), the Supreme Court upheld the facial validity of the Texas capital sentencing scheme, finding that the constitutionally required narrowing function was performed at the guilt-innocence stage.   Further narrowing at the sentencing stage is not required.   *See also Lowenfield v. Phelps*, 484 U.S. 231, 243-47 (1988); *West v. Johnson*, 92 F.3d 1385, 1406 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997).  As the narrowing occurs before the punishment phase, Petitioner's "attack on the words used *during* punishment is unavailing." *Paredes v. Quarterman*, 574 F.3d 281, 294 (5th Cir. 2009) (emphasis in original).

The Fifth Circuit has repeatedly upheld the constitutionality of Texas's capital sentencing regime and has concluded that "the terms in Texas's second special issue 'have a plain meaning of sufficient content that the discretion left to the jury [is] no more than that inherent in the jury system itself." *Id*. (rejecting expanded definitions for "probability," "criminal acts of violence," and "continuing threat to

---

[6]       Since Petitioner's conviction, the statute has been amended, now inquiring of the jury "whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment *without parole* rather than a death sentence be imposed."  TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(e)(1) (emphasis added).

society"), *quoting Milton v. Procunier*, 744 F.2d 1091, 1095-96 (5th Cir. 1984).   *See Turner v. Quarterman*, 481 F.3d 292 (5th Cir.) (rejecting expanded definitions for "probability," "criminal acts of violence," and "continuing threat to society"), *cert. denied*, 551 U.S. 1193 (2007); *Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999) ("[w]e similarly have rejected contentions that 'probability' and other terms included in the statutory special issues are unconstitutionally vague") (citations omitted); *Woods v. Johnson*, 75 F.3d 1017, 1034 (5th Cir. 1996) (Court notes that it has frequently rejected challenges to the lack of definition of diverse terms in the first two punishment special issues); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir. 1993) (not necessary to define "deliberately," "probability," or "society"); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993) (holding that terms used in special issues, including "deliberately," "probability," "criminal acts of violence," and "continuing threat to society," "are not so vague as to require clarifying instructions"); *Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir.) ("deliberately" and "reasonable doubt" need not be defined as their "common meaning is sufficiently clear to allow the jury to decide the special issues on punishment"), *cert. denied*, 483 U.S. 1035 (1987); *Milton v. Procunier*, 744 F.2d 1091, 1095-95 (5th Cir. 1986) ("deliberately," "probability," and "criminal acts of violence" "have a plain meaning of sufficient content that the discretion left to the jury" is "no more than that inherent in the jury system itself"), *cert. denied*, 471 U..S. 1030 (1985).   *See also Pulley v. Harris*, 465 U.S. 37, 50 n. 10 (1984) (Texas punishment issues are not impermissibly vague as

they have "a common sense core of meaning").  Petitioner's Seventh, Eighth, and Ninth issues are without merit.

Petitioner's first issue is likewise without merit.  Petitioner argues that the mitigation special issue presented to the jury is insufficient under *Penry II* because it sends mixed signals to the jury.  Petitioner bases his argument on the opinions in *Penry II* and *Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007).  However, Petitioner was not sentenced under the special issues found problematic in those cases.  The special issues given to the jury in this case were as follows:

Special Issue No. 1

Is there a probability that the defendant, Carroll Joe Parr, would commit criminal acts of violence that would constitute a continuing threat to society?

[. . .]

Special Issue No. 2

Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

2 CR 320-22.  Unlike the foregoing, the special issues given in *Coble* and *Penry II* were a judicially crafted "nullification" instruction which were "internally contradictory, and placed law-abiding jurors in an impossible situation."  *Penry v. Johnson*, 532

21

U.S. 782, 799 (2001) (*Penry II*).  The problems identified in Penry II are not present in this case.

In analyzing whether a sentencing scheme is proper, the analysis is "whether the procedure, whatever it was, allowed the jury to express its reasoned moral response to the defendant's mitigating evidence."  *Nelson v. Quarterman*, 472 F.3d 287, 303 (5th Cir. 2006) (*en banc*), *cert. denied*, 551 U.S. 1141 (2007) (internal citations omitted).  The standard for making that determination "is whether there is a reasonable likelihood that the procedure precluded the jury from giving full consideration and full effect to the defendant's mitigating evidence." *Id*.  The special issues in this case allowed the jury to consider all of Petitioner's mitigating evidence. The rejection of Petitioner's arguments by the Court of Criminal Appeals was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established law.  Additionally, the decision of the Court of Criminal Appeals was not based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

G.  Art. 37.071 §2.  Petitioner argues that this statute, known as the "12/10 rule" violates his rights to due process and to be free from cruel and unusual punishment.  The statute requires at least ten jurors to agree in order to return a negative answer to the punishment special issues and 12 to deliver an affirmative answer.  Petitioner argues that this scheme has a potential for creating confusion among jurors who may be discouraged from voting for a life sentence because of the

belief that their vote will not count unless nine other jurors agree, and because the jury is not informed of the result if the jury is unable to agree on an answer to the special issues. The Court of Criminal Appeals found Petitioner's claim without merit.

Petitioner's argument is foreclosed by Fifth Circuit precedent, which has found that the Texas system allows all jurors to take any mitigating circumstance into account. *See Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994) (noting that the Texas special issues do not contain the constitutional violation presented in the case upon which Petitioner relies – *Mills v. Maryland*, 486 U.S. 367 (1988)). The Fifth Circuit has consistently held that it is barred from extending *Mills* to the Texas death penalty scheme. *See Hughes v. Dretke*, 412 F.3d 582, 594 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006). Additionally, the Supreme Court has "rejected the theory that a district court's failure to instruct the jury as to the consequences of deadlock gives rise to an Eighth Amendment violation." *Alexander v. Johnson*, 211 F.3d 895, 897 n. 5 (5th Cir. 2000). *See also Jacobs v. Scott*, 32 F.3d 1319, 1328-29 (5th Cir. 1994) (rejecting argument that Texas's 10-12 rule prevents jurors from considering mitigating circumstances). The State Court's rejection of this claim was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established law. Additionally, the decision of the Court of Criminal Appeals was not based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. In light of the foregoing, it is

**ORDERED** that Petitioner's application for federal writ of habeas corpus is **DENIED** and this case is **DISMISSED**.  It is further

**ORDERED** that any motions not previously ruled upon by the Court are **DENIED**.  Additionally, having considered the findings and conclusions set forth above and the requirements of 28 U.S.C. § 2253, the Courts finds, *sua sponte*, that a certificate of appealability should not issue, as Petitioner has failed to make a substantial showing of the denial of a constitutional right.

**SIGNED** on this 28th day of March, 2011.

_____

WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE